Saunders *v.* Haynes.

---

## CHAS. R. SAUNDERS *v.* J. P. HAYNES.

THE Act giving jurisdiction over the subject of contested elections to the Judge of the County Court, is constitutional, and District Judges are embraced within it. This is one of the "special cases," of which the Constitution provides, that the County Judge may take cognizance when authorized by the Legislature.

The fact that the candidate receiving the highest number of votes at an election by the people, is ineligible, does not give the office to the next highest on the list.

In a proceeding to contest the election of defendant as District Judge, the ineligibility of the candidate receiving the highest number of votes, the defendant being next on the list, is no defense—because this matter, if true, could not protect the *incumbent* from the consequences of an unauthorized possession of the office.

*Quere:* Whether the place or employment of Inspector of Customs is a lucrative office, under the United States, within the Constitution of this State.

APPEAL from the County Court of Klamath County.

This was a proceeding to contest the election of defendant as Judge of the District Court, for the Eighth District. It was brought before the County Judge of Klamath County, one of the counties of that district.

The nature of the proceeding is stated by the Court. Defendant demurred to the complaint, for want of jurisdiction in the County Court. The demurrer was overruled, and an answer filed denying knowledge of any misconduct in the officers of election, averring that Turner received illegal votes; and further, that at the time of the election he was ineligible, because holding a lucrative office under the United States, to-wit: the office of "Inspector of Customs," and that he, the defendant, received the highest number of legal votes.

Relator demurred to so much of the answer as set up the illegal votes for Turner, and his ineligibility because an "Inspec-

tor of Customs." The demurrer was sustained. The decree below was in favor of relator, holding Turner to be entitled to the office. Defendant appealed.

*Heydenfeldt*, for Appellant.

I. The County Court had no jurisdiction of this action because—

1. The statute only confers the right to hear contested elections to an office to be exercised in and for such county. (Wood's Digest, 380, Art. 2155, Sec. 51.)

2. The Constitution gives to the District Court jurisdiction in all cases in law and equity where the amount in controversy exceeds two hundred dollars.

This Court must judicially take notice of the Act creating the Eighth District, whereby the salary is fixed at five thousand dollars; and, therefore, the contest for this office must be within the jurisdiction of the District Court. (*Wammack* v. *Holloway*, 2 Ala. 31.)

Contesting an election is not a "special case," within the meaning of the Constitution; it is only another form of trying the title to the office. The judgment required to be pronounced is, "annulling and setting aside such election," "declaring the other person elected," "the commission is thereby rendered void and the office vacant." (Wood's Digest, 382, Secs. 63, 64, 73; *Parsons* v. *Tuolumne Water Works*, 5 Cal. 43; *Broch et al.* v. *Herrich et al.* 5 Id. 279.) The proceedings here bear a precise resemblance to those in a case of *quo warranto*. The whole effect of the statute is to invest in the County Court jurisdiction in cases of *quo warranto*, allowing those inferior Courts to determine questions affecting property of greater value than was designed by the Constitution to be entrusted to them—and that, too, in cases where Courts of general jurisdiction had always supplied a remedy, and the proceedings in which are well known features in their framework.

Nor can this be called a mere contest about a commission; the statute declares, as a result of the judgment, that "the office shall become vacant." (Wood's Dig. 382, Sec. 73.) It is settled that it is the appointment or election which confers the right, and not the commission, which is only evidence of it. (*Jeter* v.

*The State,* 1 McCord, 233; *State* v. *Lyle,* Id. 238; *Wammack* v. *Holloway,* 2 Ala. 31.) The contest, therefore, is about a substantial right, which is determined by the judgment, and that right is the right to hold and exercise the office, and enjoy its emoluments and power. To leave such a jurisdiction with the County Court, would be contrary to the whole current of decisions of this Court defining and limiting the powers of the various Courts.

II. The next point is, that the Court erred in sustaining the demurrer to so much of the answer as set up the fact that Turner was at the time holding a lucrative office under the Government of the United States, and was, therefore, ineligible. This was demurred to on the ground that it was not responsive to the relation. Now the relation alleges, as the only reason why the defendant was not entitled to the office, that Turner had received a larger vote—if, then, Turner was not eligible, Haynes was elected. The vote for Turner was a blank, and thrown away. The very question came up in *Hatcheson* v. *Tilden & Bowley,* (4 Harris & McHenry, 279;) *Spear* v. *Robinson,* (29 Me. 542.)

If the allegation set up in the answer of Haynes be true, it is a complete bar to the relation—Turner was not eligible. (*People* v. *Whitman,* 10 Cal. 38; *Rodman* v. *Harcourt,* 4 B. Munroe, 224.)

*Gregory Yale,* for the Relator.

Appellant makes two objections to the jurisdiction of the County Court:

1st. That the statute only confers the right to hear contested elections to an office to be exercised in and for such county.

2d. That the Constitution gives to the District Court jurisdiction in all cases in law and equity where the amount in controversy exceeds two hundred dollars.

Both of these points may be considered as settled by the decision of this Court in *Whipley* v. *McKune* (12 Cal).

This statute was enacted in 1850, and the mode of contesting an election for the office, as well as the election, has remained unchanged, except by the amendments of the Act of the 27th of April, 1855 (p. 160).

True, the word "county" only is used in Section 51 of the Act of 1850 (Wood's Digest, 580). But the caption of that section

is general, and provides for "contesting elections other than for members of the Legislature, Governor, and Lieutenant-Governor." This exception necessarily includes the office of District Judge. He is a county officer *quoad hoc;* so with respect to all the counties within his district.

Section 5 of the Act of 1850 was amended by Section 10 of the Act of the 25th of April, 1851, (Ch. 15,) by extending the time for filing the statement to forty, instead of twenty, days, as the Act of 1850 provided. The word "district" is still retained in the amendment. This, with the caption to Section 51, which is really a part of the law, leaves no doubt that the Legislature intended to authorize the contest of district officers. The Constitution provided for determining contests for the office of Governor, Lieutenant-Governor, and members of the Legislature. This Act was intended to authorize the inquiry as to all other officers. (See *Williams* v. *Walton,* 9 Cal. 145.)

It is not admitted that this proceeding is equivalent to an information in the nature of a *quo warranto* to try title to an office.

The Government is not a party. The statute gives the right to any elector to make the statement contesting the right of any one claiming to have been elected, or of the validity of the whole election. The party claiming the office adversely need not be a party to the proceeding, and he is not estopped by the judgment any more than the Government would be. There need be no relator, or a third party. The statement is direct to the Court, without form, embodying the facts.

The Government is an indispensable party to an information in the nature of a *quo warranto.* At common law it was a writ of right for the King against the usurper of an office, franchise, or liberty. (3 Blac. 262.) The same rule is applied to the Government of the United States. (*Wallace* v. *Anderson,* 5 Wheat. 292.) The writ was dismissed for the want of jurisdiction. Chief Justice Marshall said that "a writ of *quo warranto* could not be maintained but at the instance of the Government." (See, also, *Commonwealth* v. *Burrell,* 7 Barr, 34; *Commonwealth* v. *Lexington, etc.* 6 B. Monroe, 399; Practice Act, Sec. 310; *State* v. *Hardie,* 1 Iredell Law, 42; 1 Blac. Notes 66, 67.)

The writ of *quo warranto* falling into disuse gave way to an information by the Attorney-General, in the nature of a *quo*

*warranto.* (3 Blac. 262.) But there is one fact essential to the exercise of this jurisdiction, not common to this case—the party must not only claim the office, or franchise, but he must be actually exercising its duties or liberties. (*The King* v. *Whitewell,* 5 Term, 85; *Buller's Nisi Prius,* London Ed. 1791, 212.)

This common law rule is preserved in the modern cases. (*The Queen* v. *Slatter,* 11 Adolph. & El. 505—508 ; *The Same* v. *Quayle; Regina* v. *Armstrong,* 34 Law and Eq. 290, 1856.) This case, then, is one of the special cases named in our Constitution. (*People* v. *Scrugham,* 20 Barb. 203—205.)

The first reply to the objection based on Turner's ineligibility is, that the answer of Haynes does not state the emoluments of the office held by Turner. The term "lucrative office" is a conclusion of law. It is said that he held the office of Inspector of Customs, but avers no fact as to the emoluments.

But is an Inspector of Customs such an officer as the State Constitution contemplates? All officers under the Federal Government, except in cases where the Constitution itself provides, are to be established by law, (*The United States* v. *Maurice,* 2 Brock. 96,) and they must be appointed by the President, unless in cases where Congress by law vests the appointment of inferior offices in Courts of Law, "or the heads of departments."

Chief Justice Marshall says in that case that an office is defined to be "a public charge or employment;" and he who performs the duties of the office is an officer. And although an office is "an employment," it does not follow that every employment is an office.

The Act of the 2d of March, 1799, (1 Stat. at L. 641; Brightly's Dig. p. 319, Sec. 3,) provides the mode of appointing Inspectors, in the section defining the duties of Collectors. They "shall, with the approbation of the principal officer of the treasury department, *employ* proper persons as Weighers, Gagers, Measurers, and *Inspectors,* at the several ports within their districts." By Section 31 of the Act fixing compensation at two dollars per day, authority is given to employ "occasional Inspectors;" and by Section 41, where the compensation is increased fifty per cent. "persons employed as occasional Inspectors," are mentioned.

In the case of *The United States* v. *Wood,* (2 Gallison, 361,) Judge Story decides that the office is held at the pleasure of the

Collector, and ceases at his death, resignation, or removal.   (See also *Republica* v. *Dallas*, 3 Yates, 314, 315; 17 S. & R. 219.)

This employment being at the mere will of the Collector, and probably an "occasional" employment besides, no information would lie at the instance of the Government for an alleged usurpation of its duties.   (*State* v. *Champlin*, 2 Bailey, 223.)

It is argued that all votes cast for Turner were so many blanks, and count for Haynes.   This is not the law of this State. The Legislature ruled on this question in the Duncombe case at the present session.   (See, also, Whitman's case.)

The rule is, that a candidate holding the federal office is not ineligible, but that he cannot hold both the federal and State office; the acceptance of the last is not forbidden, but the effect of the acceptance is to vacate the first.   (4 Md; *Rodman* v. *Harcourt*, 4 B. Munroe, 225.

BALDWIN, J. delivered the opinion of the Court—TERRY, C. J. concurring.

This was a proceeding under the Statute of 1850, (Wood's Dig. 389,) for contesting the election of defendant as Judge of the District Court for the Eighth District.   It was brought before the County Judge of Klamath County, one of the counties of that district.

The grounds of the contest are misconduct in the officers conducting the election, whereby the defendant was improperly returned as elected, when one of his competitors received the highest number of legal votes.

1. The first point made by the Appellant is, that the County Judge had no jurisdiction to try a contested election for District Judge; but that his jurisdiction is limited to county officers.

The case of *Whipley* v. *McKune* was brought before the County Judge, though but one county composed the Sixth District.   In that case, however, no point was made as to the jurisdiction of the Judge.

The statute evidently designed to afford a new and summary remedy in cases of contested elections, applying to all offices filled by popular vote, except those elected by the State at large The general election law is divided into chapters, each entitled of the subject matter, which titles seem to be parts of the Act.

After prescribing the general machinery of elections, follows chapter six, entitled " Contesting elections other than for members of the Legislature, Governor, and Lieutenant-Governor." The first section of this chapter provides, " that any elector of the proper county may contest the right of any person declared duly elected to an office to be exercised in and for said county." This language, it is true, is not as clearly expressive of the legislative intent to include the office of District Judge within its purview as might be wished.

The Judge of the District Court unquestionably exercises his office in and for each county of his district, though it is very true that his jurisdiction is not confined to any one county of his district. The verbiage is peculiar; if the intent were to limit the operation of the Act to county offices, it would have been a simple mode of expression to say that an elector for any county may contest the right of any one declared elected to any county office of the county of the elector's residence. But when, in addition to this, we see a remedy of this same general character provided for all other officers, except State officers, and the title of the chapter—not of the general Act—is as we have stated, and when, further, the words certainly embrace the case of a District Judge, when the county comprises his district—the conclusion would seem to be that the statute meant to embrace the case. Closer examination of the Act confirms this view. The language, " Any elector of the proper county may contest the right, etc. to an office to be exercised in and for such county." The next clause of the same section, which applies to the township offices, uses different language : "Any elector of a township may contest the right of any person declared duly elected to any office in and for such township." Why this distinction in the phraseology, if it were intended to confine the contest to county and township officers ? But Section 55 of the Act seems to remove all difficulty, for it provides that no person shall be competent to contest any election unless he is a qualified elector of the district, county, or township, in which the office is to be exercised. The word " district" here, evidently, from the collocation of the words, does not refer to any electoral divisions of a county or a township, but to such a division of the State. And by Section 73, "When the election is annulled and no appeal, the certificate or commission shall be rendered valid."

Now, no commissions issue to county officers except to the County Judge, who, of course, could not sit on his own case, and therefore is not within the Act, and hence it would seem that the District Judge was meant to be included, as the only officer to whom this expression would apply. A close examination of the seventy-four sections of this Act fails to show any single expression which indicates that the intent was to embrace only county officers within the statute. On the contrary, general expressions are used, which embrace, without straining, the office in question. It is true that some embarrassments may arise in contesting elections in one county when the result of the entire election depends on the returns or acts done or omitted in other counties; but this same difficulty exists in proceedings by *quo warranto.* And the fact that the Judge of the District Court is, or may be, a party to this proceeding, may have been an additional reason for embracing the case within this special jurisdiction.

2. It is objected that this Act is unconstitutional. The grounds of this objection are, that by the Constitution, jurisdiction is given to the District Courts in all cases of law and equity where the amount in controversy exceeds two hundred dollars. Conceding, for the argument, that an office like this has an ascertained value as property, yet the argument cannot be maintained. This proceeding is not according to the course of the common law; it gives new rights and remedies. By the common law an election could not be contested by an elector. The Government might, by proceeding of *quo warranto,* eject an intruder from office; but this it did by virtue of its sovereign power, and by a process analogous to a criminal prosecution.

The Statute of 1850 creates a special proceeding, wholly distinct in form, and substantially different from this common law remedy. It appoints a tribunal for settling these peculiar controversies. This is one of the "special cases" for which the Constitution has provided that the County Judge may take cognizance of by legislative direction. It it an inquisition of office, as much within the jurisdiction of this officer as would be a writ of *ad quod damnum,* or of lunacy, or insolvent proceedings, or forcible entry and detainer. And the mere fact that a pecuniary interest, over two hundred dollars in value, might be inci-

Saunders *v.* Haynes.

dentally affected, is no reason why the jurisdiction should be denied.

3. The next error assigned is, the sustaining of the demurrer to so much of defendant's answer as sets up this defense: "And for further answer, the defendant says that all of the votes of said election, cast for said Turner, are null and void, for he charges that the said Turner was, at the time of the alleged election, ineligible to the office of District Judge, for that the said Turner, for a long time previous to, and on the said first Wednesday of September, 1858, held, and at the present time holds, the office of Inspector of Customs for the port of Trinidad, in the State of California, and that said office was, at the time of said election, and is, a lucrative office under the Government of the United States, and defendant says he received the highest number of legal votes for the office of Judge," etc.

It will be observed that the point of this defense is, that the votes cast for Turner, supposing he received the highest number, were nullities, because of his assumed ineligibility. But we do not so consider. Although some old cases may be found affirming this doctrine, we think that the better opinion at this day is, that it is not correct.

The celebrated controversy in the British Parliament between Wilkes and Luttrel has given rise to much discussion; and the opinions of jurists and statesmen have been somewhat divided. But the prevailing opinion, English and American, of modern times, seems to be against the precedent established in that case. In the case of Whitman and Melony, (10 Cal.) Mr. Justice Field clearly intimates his opinion in favor of the principle that the votes given for an ineligible candidate are not to be counted for the next highest candidate on the poll. In *The State of Wisconsin* v. *Giles*, (1 Chandler, 117,) the same doctrine is held; and it is enforced by the Judges of the Supreme Court of Maine, in their opinion, to be found in 38 Maine Rep. 597.

Our legislative precedents seem to be the same way. Upon principle, we think the law should so be ruled. An election is the deliberate choice of a majority or plurality of the electoral body. This is evidenced by the votes of the electors. But if a majority of those voting, by mistake of law or fact, happen to cast their votes upon an ineligible candidate, it by no means follows that

the next to him on the poll should receive the office.   If this be so, a candidate might be elected who received only a small portion of the votes, and who never could have been elected at all but for this mistake.   The votes are not less legal votes because given to a person in whose behalf they cannot be counted; and the person who is the next to him on the list of candidates does not receive a plurality of votes because his competitor was ineligible.   The votes cast for the latter, it is true, cannot be counted for him; but that is no reason why they should, in effect, be counted for the former, who, possibly, could never have received them.   It is fairer, more just, and more consistent, with the theory of our institutions, to hold the votes so cast as merely ineffectual for the purpose of an election, than to give them the effect of disappointing the popular will, and electing to office a man whose pretensions the people had designed to reject.

This view disposes of the whole matter of the demurrer; for the matter set up was no defense to the petition if it were sufficient to defeat the election of Turner.   For it was not necessary to a judgment against the defendant in this proceeding, that Turner should show any claim to the office; it was enough that the defendant had none.

But, in order to terminate this controversy, we have examined the sufficiency of this matter of defense as affecting the right of Turner.   The Constitution declares that any person holding a lucrative office under the Federal Government shall be ineligible to a State office.   Some question has been made whether this provision is anything more than a provision forbidding the acceptance of the State office when the disqualifying fact exists. (See 4 B. Monroe, 225.)   But we assume, as seems to be intimated in Whitman and Melony's case, that the fact creates an incapacity to be elected to the office.   The question arises, is this place or employment of Inspector of the Customs a lucrative office under the Government of the United States.   An Inspector of Customs, under the Federal law, seems to be an employé of the Collector of the district, appointed by him and removable at his pleasure.   (2 Gall. 361.)   The Act of Congress of 2d March, 1799, (1 U. S. St. at Large, 641,) defining the duties of Collectors, says they shall, with the approbation of the principal officer of the Treasury Department, employ proper per-

sons as Weighers, Guagers, Measurers, and Inspectors, at the several ports within their districts. This Act fixes the compensation at two dollars per day; it is now, we believe, three dollars. By Section 41, authority is given to employ "occasional Inspectors."

An analogous provision to ours exists in the Pennsylvania laws. In *Commonwealth* v. *Burns*, (17 Sergeant & Rawle, 220,) the whole question is discussed with great learning and ability, and it is there held that a Government Printer was not within the meaning of the Act.

In *United States* v *Maurice*, (2 Brock. R. 96,) Chief Justice Marshall gives the definition of an office: "Federal offices, except in cases where the Constitution itself provides, are to be established by law, and officers must be appointed by the President, unless in cases where Congress, by law, vests the appointment of inferior officers in Courts of Law, or in the heads of departments; and further, that an office is defined to be a public charge or employment, and he who performs the duty of the office is an officer. And although an office is an employment, it does not follow that every employment is an office."

We see no more reason for holding that an Inspector is an officer than a Weigher, Measurer, Clerk, Printer, Drayman, Porter, or other employé, dependent for his wages upon his labor, and for his employment, upon the pleasure of a subordinate officer of the Government.

Judgment affirmed.

On petition for rehearing, the following opinion was delivered by BALDWIN, J—TERRY, C. J. concurring:

We have given the argument of the Appellant's counsel a reconsideration, as desired. We adhere to the positions in our former opinion: 1st. That the Act giving this jurisdiction over the subject of contested elections to the Judge of the County Court is constitutional, and that Judges of the District Court are embraced within it. 2d. That the fact that the highest candidate is ineligible, does not give the election to the next on the list. 3d. That the special defense set up in the answer—the ineligibility of Turner—was no bar to the proceeding, because this matter, if true, did not protect the incumbent from the con-

sequences of an unauthorized possession of the office. But it was not necessary to hold, in order to decide the case before us, that the place or employment of Inspector of Customs was not an office under the United States, within the meaning of the Constitution of the State. Neither the Government, nor Judge Turner, the claimant of this judicial office, is before us, and therefore, neither could be bound by the judgment of the County Judge, which only determines that the defendant is not entitled to the office, and furnishes the Executive with *prima facie* evidence that Judge Turner is. The forcible argument addressed to us by the defendant's counsel suggests sufficient doubts of the correctness of the last proposition of the opinion, to leave the question open and undecided until a case shall be presented directly raising it, and all the facts touching the matter brought out, and an opportunity be afforded for fuller consideration. We, therefore, deny the prayer of the petition for a rehearing, but modify the opinion in the manner suggested.