[No. 5049.]

## T. O. CRAWFORD *v.* S. G. S. DUNBAR.

LUCRATIVE OFFICE. — The office of Inspector of Customs in a collection district to which there is annexed a salary of one thousand dollars per annum is a lucrative office within the meaning of sec. 21, art. 4, of the Constitution of this State; and one who holds such office is ineligible to the office of School Superintendent when it is an office of profit.

CIVIL OFFICE.—The office of School Superintendent of a county is a civil office within the meaning of sec. 21, art. 4, of the Constitution of this State.

OFFICER DE FACTO. — One who is the incumbent *de facto* and not *de jure* of a lucrative office under the United States, is not ineligible to a civil office of profit in this State.

TITLE TO AN OFFICE. — When the title of one to an office consists in written documents, being his appointment, acceptance, and his oaths of office, which are the record of his title to the office, he will not be permitted by parol evi-

dence to falsify the record for the purpose of showing that he was not an officer *de jure*, but only an officer *de facto*.

ELECTION TO AN OFFICE. — The candidate for an office who does not receive a majority or a plurality of the votes is not elected because the opposing candidate who did receive a majority or plurality of the votes was ineligible.

APPEAL from the County Court, County of San Joaquin.

At the general election for county officers held in the County of San Joaquin on the first Wednesday in December, 1875, T. O. Crawford, S. G. S. Dunbar, and Jenny Phelps were voted for, for the office of School Superintendent. Crawford received eleven hundred and eighty-two votes, Dunbar received seventeen hundred and two votes, and Phelps received eight hundred and thirty votes. Dunbar was declared elected. Crawford contested his right to the office, in the County Court, under the provisions of the statute. On the 24th of March, 1875, Dunbar was, on the nomination of the Collector of Customs in the San Francisco collection district, appointed Inspector of Customs, with the approval of the Secretary of the Treasury. On the 2nd of April, 1875, a certificate in writing, signed by the Collector of Customs at San Francisco, was delivered to Dunbar, and he accepted of the appointment and entered into possession of the office. On the 5th of April Dunbar took one of the oaths of office which he was required to take before a notary public at Stockton. On the same day, Dunbar, at the City of Stockton, signed the following form of oath :

"I, S. G. S. Dunbar, having been appointed Inspector of Customs, No. 31, at Stockton, *vice* E. Block, do solemnly, sincerely, and truly swear that I will diligently and faithfully execute the duties of the said office of Inspector, and will use the best of my endeavors to prevent and detect fraud in relation to the duties imposed by the laws of the United States. I further swear that I will support the Constitution of the United States."

This last oath was certified by Shannon, the Collector at San Francisco, as though it had been sworn to before him ; but it was not sworn to before the Collector, nor sworn to by Dunbar at all. Stockton is about one hundred and twenty-five miles from San Francisco. The oaths and the appointment to the office were filed in the office of the Inspector of Customs, and

he took possession of the office. The Court below rendered judgment for the defendant. The plaintiff appealed. The other facts are stated in the opinion.

*J. B. Hall,* for the Appellant.

1. The oral evidence was irrelevant and immaterial, as it did not go to any fact in dispute.

2. The Collector is a *sworn* officer, and acts under bond, also, for "the true and faithful discharge" of his official duties. (Revised Statutes of United States, secs. 2616, 2617, 1756–9.)

3. He is authorized to administer oaths to subordinate officers of the Customs. (Statutes at Large U. S. vol. 18, p. 309; Act of February 8th, 1875, sec. 11.) And he has general power to administer oaths in matters appertaining to his office, and to certify such oaths in writing. (Revised Statutes U. S. sec. 2805, *et. seq.*) The Collector must *certify under his hand and seal of office* to the administration of the oath to a subordinate officer. (Revised Statutes U. S. secs. 2617, 2618.) And the *certificate is filed in his office, and with him as its custodian.* (Statutes at Large U. S. vol. 18, part 3, p. 309; Act of February 8th, 1875, sec. 11.)

4. The certificate of the Collector, as made and filed, is the official *record* of the fact that the oath *was administered, and parol evidence is not admissible for the purpose of contradicting* this record. (*Dorland* v. *McGlynn,* 47 Cal. 47; *Wells* v. *Stevens,* 2 Gray, 115; *Gannon* v. *Chandler,* 30 Me. 152; *Crane* v. *Godfrey,* 44 Me. 25; *Kelley* v. *Dresser,* 11 Allen, 31; *McMicken* v. *Commonwealth,* 58 Pa. 213; *Commonwealth* v. *Slocum,* 14 Gray, 395; *Gardner* v. *Davis,* 15 Pa. 41; *Douglass* v. *McKevine,* 19 Conn. 489; *Crommet* v. *Pearson,* 6 Shepley, Me. 344; *McLain* v. *Hergaren,* 13 Johns. 184; *Dolph* v. *Barney,* Sup. Ct. Oregon, Pac. Law Rep., Jan. 25th, 1876; *Brown* v. *Galloway,* Peters C. C. 291.)

*W. L. Dudley, D. S. Terry,* and *F. T. Baldwin,* for the Respondent.

The respondent was not holding a lucrative office under the

United States at the time of his election, within the meaning of the constitutional prohibition.   The prohibition applies only to officers *de jure.*   (*People* v. *Turner*, 20 Cal. 145; *Riddle* v. *County of Bedford*, 7 Serg. & R. 386.)

The certificate of Shannon, Collector of Customs, was only *prima facie* evidence of the fact it recited, and could be disproved by other evidence.   (Code of Civil Procedure, sec. 1833; 1 Greenl. on Ev. secs. 483–4.)

By the Court, WALLACE, C. J.:

1. The office of Inspector of Customs at Stockton in the San Francisco Collection District, to which there is annexed a salary of one thousand dollars per annum, is a lucrative office within the meaning of sec. 21, art. 4, of the Constitution of the State, and if the defendant, Dunbar, held that office in September, 1875, then he was ineligible to the office of School Superintendent in the County of San Joaquin, which is a " civil office of profit under the State," the salary thereof being $1,500 per annum.

2. It is settled here that a mere *de facto* incumbency of the Inspectorship of Customs would not render Dunbar ineligible to the office of School Superintendent under the disqualifying clause of the Constitution referred to.   He must have been Inspector *de jure* in order to work that result.   (*People ex rel. Attorney-General* v. *Turner*, 20 Cal. 142.)

3. The case made upon the part of the contestant established that Dunbar, on the first Wednesday of September, 1875, was *de jure* as well as *de facto* Inspector of Customs at Stockton. It appeared from the evidence adduced by the contestants, that upon the nomination of the Collector of Customs, and with the approval of the Secretary of the Treasury, Dunbar had been appointed such Inspector of Customs, and had taken the oaths, two in number, prescribed by law, and had entered upon the discharge of his official duties, pursuant to his appointment. His appointment, and the taking by him of the prescribed oaths of office, the last of them on the 6th day of April, 1875, was established by the records thereof in due form, which, or cop-

ies of which, duly certified, were produced from their proper custodian, and it was proven, and found by the Court below to be the fact, that, pursuant to his appointment, Dunbar thereafter and on or about the 10th day of April, 1875, took possession of all the public property belonging to the office of Inspector of Customs of Stockton, theretofore under the control of his predecessor, and then and there entered upon the discharge of the duties pertaining to said office, and that he had not resigned nor been removed therefrom.

4. But Dunbar was permitted at the trial to assail his own title to the office of Inspector, which he held, and was allowed to do this by the introduction of parol evidence, which tended to show, and which the Court below held did sufficiently establish, that he had not, in fact, taken the oath of office before the Collector of the Port of San Francisco, which it appeared by the records on file in the office of the Collector at San Francisco that he had taken. There is no pretense that the name of Dunbar subscribed to the purported oath is not his genuine signature, nor that the certificate of Shannon, the Collector, attached to the jurat, is not the genuine signature of that officer. The claim is that, notwithstanding they are genuine, and in admitted due form of law in all respects, Dunbar never was in fact sworn, as the record imports that he was, but that, on the contrary, he was not in the presence of the Collector on the day on which the oath bears date, nor at the time, nor at any time since he subscribed the same, nor was ever at any time in fact sworn by that officer. The contestant objects to the introduction of parol evidence for this purpose, and his objection being overruled, and the evidence admitted, an exception to the ruling of the Court was reserved. In this ruling there was error. It was not, under the circumstances, competent to the respondent by these means to falsify the record of his own title to the office of Inspector of Customs. His appointment, acceptance, and the oaths which he took, or purported to have taken, that he would faithfully discharge its duties, constituted his title to the office. These were necessarily matters of record; the fact that a genuine record of these existed in the proper department of the Government, constituted *per se* his title to the office. Without

such a record had been made he could have no title, nor could mere independent parol evidence supply him one. His title consists of the record which creates it, and the fact and validity of the title must be determined only by the record.

5. It further appears by the findings that at the regular election in question the respondent, Dunbar, received seventeen hundred and two (1,702) votes, the contestant Crawford (the next highest vote) eleven hundred and eighty-two (1,182) votes, and Jenny Phelps eight hundred and thirty (830) votes.

Upon these facts the contestant claims that he is entitled to the office, and should have judgment here to that effect. This claim is in argument put upon the ground that Dunbar, being ineligible, the votes cast for him, though amounting in number to a plurality, were *mere nullities*, and that the respondent received a majority of the votes over Jenny Phelps, the only other eligible candidate for the office. But this position cannot be maintained. This was directly ruled here, and adhered to upon petition for a rehearing in *Saunders* v. *Haines*, 13 Cal. 145. In that case the Court said : " An election is the deliberate choice of a majority or plurality of the electoral body. This is evidenced by the votes of the electors. But if a majority of those voting, by mistake of law or fact, happen to cast their votes upon an ineligible candidate, it by no means follows that the next to him on the poll should receive the office. If this be so, a candidate might be elected who received only a small portion of the votes, and who never could have been elected at all but for this mistake. The votes are not less legal votes because given to a person in whose behalf they cannot be counted ; and the person who is the next to him on the list of candidates does not receive a plurality of votes because his competitor was ineligible. The votes cast for the latter, it is true, cannot be counted for him ; but that is no reason why they should, in effect, be counted for the former, who, possibly, could never have received them. It is fairer, more just, and more consistent with the theory of our institutions, to hold the votes so cast as merely ineffectual for the purpose of an election, than to give them the effect of disappointing the popular will, and electing to office a man whose pretentions the people had designed to reject."

It results from this view that the judgment of the Court below must be reversed, and the cause remanded with directions to render judgment vacating the office.