CANDAL ET AL., DEMANDANTES–IMPUGNADORES–APELADOS, *v.* VARGAS ET AL., DEMANDADOS–IMPUGNADOS–APELANTES.

APELACIÓN procedente de la Corte de Distrito de Humacao en pleito sobre impugnación de elecciones.

No. 2418.—Resuelto en mayo 20, 1921.

IMPUGNACIÓN ELECTORAL—DESESTIMACIÓN DE APELACIÓN.—Dictada sentencia en un pleito sobre impugnación de elecciones por la cual se condena a los demandados a abandonar los cargos para que fueron electos y a pagar las costas no procede la desestimación de la apelación que los demandados establecieron contra esa sentencia por el fundamento de carecer de finalidad práctica su resolución por el hecho de que mientras se tramitaba el pleito en la corte inferior y antes de que se dictara sentencia los demandados pusieron en conocimiento de la corte que habían renunciado los cargos objeto de la impugnación y que otras personas habían sido nombradas para sustituirles y habían tomado posesión de dichos cargos, pues nada ha ocurrido después de haberse dictado la sentencia recurrida que haga puramente académica la resolución de si hubo o no error al condenar a los apelantes; y si por tales renuncias y nombramientos debió sobreseerse y archivarse el pleito en la corte inferior sin que recayera sentencia es cuestión para decidir nosotros en la apelación contra el fallo recurrido.

ID. — JURISDICCIÓN — RENUNCIA DEL ASAMBLEISTA MUNICIPAL IMPUGNADO. — De acuerdo con la legislación· vigente en Puerto Rico, los miembros de una asamblea municipal que han obtenido un certificado de elección no pueden impedir, cuando su elección es impugnada, que el pleito continúe hasta sentencia definitiva por el hecho de renunciar sus puestos los demandados. No puede concluirse que la renuncia priva a la corte de jurisdicción y al pleito de finalidad práctica.

ID.—ELECCIÓN DE CANDIDATOS INELEGIBLES—REGLA INGLESA—CAUSA DE ACCIÓN — La elección de un candidato incapacitado para desempeñar un cargo público, aunque la causa de su incapacidad fuera conocida por los electores antes de darle sus votos, no da acción al candidato derrotado que le ha seguido en número de votos para demandar que se declare que a él corresponde ocupar el cargo de aquél, pues la vacante producida por la incapacidad del elegido deberá proveerse de acuerdo con la ley. Este Tribunal Supremo no acepta la doctrina conocida como la regla inglesa según la cual cuando los electores dan sus votos a una persona sabiendo que no puede desempeñar el cargo para que la eligen esos votos se han perdido y es como si no hubieran votado por lo que se ha de entender electa la persona que le sigue en número de votos en la elección, pues siguiendo a la casi totalidad de los tribunales de los Estados Unidos que han considerado esta cuestión, declara que solamente tiene derecho al cargo la persona que ha recibido el mayor número de votos y no la que fué rechazada por los electores, por ser una idea fundamental entre nosotros que la mayoría es la que elige y que cualquier doctrina que abra el camino para un gobierno por la minoría es antirepublicana y antiamericana.

ID.—CAUSA DE ACCIÓN.—La demanda tampoco es procedente de acuerdo con la Ley sobre Impugnación de Elecciones porque ésta por sus propios términos es aplicable a casos en que el contendiente o demandante tiene derecho a ser declarado electo si tuviera éxito.

Los hechos están expresados en la opinión.

Abogado de los apelados: *Sr. R. Cuevas Zequeira.*

Abogados de los apelantes: *Sres. L. Feliú* y *J. Soto Rivera.*

EL JUEZ ASOCIADO SR. ALDREY, emitió la opinión del tribunal.

Tenemos pendiente de resolución una moción de los apelados para que desestimemos la apelación establecida en este caso y debemos resolverla antes de poder considerar los méritos de la apelación, porque si la desestimación es procedente quedará terminado el asunto en esta Corte Suprema y no podremos decidir el recurso en su fondo.

El pleito versa sobre impugnación de la elección de los tres demandados y apelantes quienes fueron electos en las

elecciones generales verificadas en esta Isla el 2 de noviembre de 1920 miembros de la Asamblea Municipal de Fajardo, impugnación que los demandantes fundan en que los demandados no tenían capacidad legal el día 11 de octubre de 1920 para figurar como elegibles en la papeleta oficial para las elecciones y en que por esa incapacidad conocida de los electores corresponde cubrir sus puestos a los tres demandantes, que aparecen derrotados por los tres demandados, según el escrutinio verificado por la Junta Insular de Elecciones.

Los demandados fueron notificados de la demanda el día 31 de diciembre de 1920 y presentaron excepciones previas contra ella pero cuando el día 10 de enero de 1921 se celebró la primera sesión de la Asamblea Municipal de Fajardo constituída por las personas electas en noviembre anterior, solamente uno de los tres demandados tomó posesión de su cargo y los otros dos presentaron en ese día la renuncia de sus puestos electivos, siéndoles aceptadas al día siguiente y nombradas otras dos personas por la Asamblea Municipal para sustituirlos; y también en este día el otro demandado que había tomado posesión del cargo lo renunció y fué nombrada otra persona en su lugar. En 26 de enero de 1921 los tres demandados pusieron estos hechos en conocimiento de la Corte de Distrito de Humacao y le pidieron que fuera sobreseído y archivado el pleito con las costas a los demandantes porque por razón de sus renuncias y nombramiento de otras personas para ocupar sus puestos carecía este pleito de finalidad práctica. Se opusieron los demandantes a esa petición y la corte la declaró sin lugar dictando después sentencia en rebeldía de los demandados declarando nula su elección, disponiendo que sean desposeídos de sus cargos y que sean instalados en ellos los demandantes, y condenándolos a pagar las costas, gastos, desembolsos y honorarios de abogados de los demandantes.

Apelada esa sentencia por los demandados se fundan los

apelados para solicitar que la desestimemos en las siguientes razones:

"Primera, porque los demandados y apelantes no son parte agraviada por la sentencia que dictara la Corte de Distrito de Humacao toda vez que dichos demandados y apelantes renunciaron los cargos controvertidos y se separaron del litigio.

"Segunda, porque los expresados demandados y apelantes no tienen interés alguno en este pleito, y en tal virtud la controversia planteada es puramente ficticia y carece de finalidad práctica, toda vez que la sentencia que en definitiva dictara esta Honorable Corte Suprema no podría ni perjudicar ni beneficiar a los apelantes en este caso.

"Tercera, porque las renuncias expresadas anteriormente aparecen de una moción de los expresados demandados apelantes presentada ante la Corte de Distrito de Humacao, que se encuentra transcrita en la página 55 de los autos radicados en la secretaría de esta Honorable Corte Suprema."

Los apelados resumen las tres anteriores razones en el alegato escrito que nos han presentado en apoyo de su moción de desestimación en la siguiente cuestión: Que los demandados no son parte perjudicada por la sentencia y que por este motivo no pueden apelar de ella, de acuerdo con el artículo 294 del Código de Enjuiciamiento Civil, que es la ley aplicable al caso, según el cual la apelación podrá establecerse por la parte agraviada por la resolución judicial.

La ley sobre impugnación de elecciones, aprobada en 7 de marzo de 1906, Compilación de los Estatutos Revisados, sección 898, y siguientes, regula el procedimiento en los casos de impugnación de elecciones de los funcionarios a que la ley se refiere y si bien la sección cuarta dispone que en esos juicios se observarán las reglas que rigen para los procedimientos en asuntos civiles, sin embargo, con respecto a apelaciones declara su sección 11 que "del fallo de la Corte de Distrito podrá apelar cualquiera de las partes para ante la Corte Suprema  *  *  * " por lo que los demandados tenían el derecho de apelar de la sentencia dictada contra ellos

en la Corte de Distrito de Humacao, porque eran los impugnados y además porque les perjudica, no sólo por el pronunciamiento que tiene declarando nula su elección y disponiendo que sean desposeídos de sus cargos, sino también porque han sido condenados en costas, por lo que aún de acuerdo con el artículo 294 del Código de Enjuiciamiento Civil son parte perjudicada por la sentencia contra ellos dictada, sin que haya ocurrido después de la sentencia hecho alguno que haga que la apelación carezca de finalidad práctica, pues si por la renuncia que hicieron de sus cargos antes de dictarse la sentencia debió sobreseerse el pleito en la corte inferior es cuestión a considerar y decidir en la apelación contra la sentencia pero no es motivo para que la desestimemos, por cuyas razones no es procedente que declaremos con lugar la moción de desestimación de la apelación y pasaremos a considerar ésta por sus méritos.

Trataremos primeramente el segundo de los motivos alegados por los apelantes para pedirnos que revoquemos la sentencia recurrida, en el que alegan que fué error de la corte inferior el declarar sin lugar la moción que le hicieron para que sobreseyera y archivara el pleito porque habiendo renunciado los cargos objeto del mismo carecía de finalidad práctica su resolución, porque si ese error existe y debió accederse a la petición de los demandados por la corte inferior entonces no sería necesario para nosotros considerar y resolver los otros motivos del recurso. Para el estudio de esta cuestión nos bastarán los hechos que antes hemos relacionado.

Fundó la corte inferior su negativa de sobreseimiento en el párrafo 161 de 9 R. C. L., página 1172, en el que dice:

"En vista del carácter personal del procedimiento estatutorio impugnando una elección, parece que si la persona declarada electa a un cargo renuncia o rehusa aceptarlo y otra persona es nombrada o electa antes de que se instituya la impugnación, esto constituye una defensa válida al procedimiento instituído contra él, y que no puede hacérsele demandado y obligado a litigar un cargo que ya no desem-

peña ni tiene. Pero parece también que después de la iniciación del procedimiento no puede, mediante renuncia, evitar la sentencia de desposesión.''

Pero exponen los apelantes que esa doctrina no está expresada en forma positiva sino en forma dudosa y que si la acción ha de dirigirse contra la persona a la cual se haya librado el certificado de elección, como dispone la sección 2 de la Ley sobre Impugnación de Elecciones, no puede proseguirse el pleito contra los demandados que ya no lo tienen por haberlo renunciado.

De acuerdo con la citada ley de impugnación de elecciones, la demanda fué dirigida contra las personas a cuyo favor se libró el certificado de elección y aunque es cierto que posteriormente los demandados renunciaron los cargos para que fueron electos y que se nombraron a otras personas para que ocuparan sus vacantes, esto no produce el resultado de que el pleito carezca de finalidad práctica y de que la jurisdicción de la corte haya terminado en virtud de esas renuncias, porque disponiendo nuestra Ley Municipal que las vacantes en los cargos de la Asamblea Municipal las cubrirá ésta nombrando a personas del mismo partido político a que pertenecía el que ha de ser sustituído, sería la renuncia del puesto impugnado cubierta por otra persona de las mismas ideas políticas un medio muy sencillo de impedir que se averiguara en los tribunales la ilegalidad de una elección y privaría al candidato derrotado ilegalmente de su derecho de ocupar el cargo que reclama, conducta que los tribunales no pueden amparar. Además, exigiendo la Ley sobre Impugnación de Elecciones que el demandado preste fianza si quiere ocupar el cargo impugnado mientras se decida la contienda y que si no lo hace en el término que fija pueda entonces prestarla el demandante y entrar desde luego en posesión de dicho cargo, de sostenerse la teoría de los demandados se les reconocería el derecho de violar esa ley, pues mediante su renuncia y sin prestar fianza esos cargos irían a hombres de sus

mismas ideas políticas y daría esto ocasión a que los deman-
dantes tuvieran que iniciar procedimientos para ocupar los
cargos cuya posesión les da la ley, si prestan la fianza que
dejaron de dar sus demandados.

Todo lo expuesto nos convence de que por razón de nues-
tras leyes las personas que han obtenido el certificado de
elección no pueden impedir, cuando su elección es impugnada,
que el pleito continúe hasta sentencia definitiva, aunque re-
nuncien los puestos. Así se resolvió también en los casos de
*Davis* v. *Jones,* 123 Ala. 647, 26 So. 321, y en los de *Sweeney*
v. *Adams,* 141 Cal. 588, 75 Pac. 182, y en el de *Bush* v. *Head,*
154 Cal. 277, 97 Pac. 512, aunque en estos dos el fundamento
fué el interés del público por concederse el derecho de im-
pugnación a cualquier elector del condado, por más que am-
bos pleitos fueron establecidos por los candidatos derrotados
sin que conste que ejercitaron ese derecho como electores.
Según "McCrary on Elections," párrafo 456 *a*, página 335, se
ha declarado por la Cámara de Representantes de los Esta-
dos Unidos en. el caso que cita de *Mackey* v. *O'Connor,* 2
Ells. 561, que cuando, pendiente en dicha Cámara un pleito
sobre impugnación de elección y después de haberse presen-
tado las alegaciones y las pruebas, el demandado muere y
se nombra un sucesor por lo que resta de su término, el
puesto del sucesor depende del pleito sobre la elección del
demandado originalmente y que en consecuencia queda obli-
gado por las alegaciones y pruebas en la contienda original
y por la decisión que después se rinda.

Así, pues, entendemos que no cometió la corte inferior el
error que se le atribuye por haber negado el sobreseimiento
y archivo del pleito por la renuncia de los demandados.

Resuelta esta cuestión consideraremos el error que se
alega en primer término, que se funda en haber declarado
la corte inferior sin lugar la excepción previa opuesta a la
demanda.

La acción fué establecida por Eladio J. Candal, José Vidal

Planellas y Luis Acosta Becerril contra Salvador Vargas, Avelino F. Carrión y Ramón Piñeiro, quienes alegaron contra ella la excepción previa de indebida acumulación de partes y de acciones así como que no aduce hechos determinantes de causa de acción, pero en este recurso de apelación los demandados apelantes sólo insisten en el último fundamento de su excepción para pedirnos la revocación de la sentencia dictada contra ellos y por tanto a él nos limitaremos.

En la demanda se alega que el día de las elecciones generales de 2 de noviembre de 1920 y con anterioridad a las 12 del día del día 11 de octubre de 1920 los demandados carecían de capacidad legal para el desempeño de los cargos de miembros de la Asamblea Municipal de Fajardo porque el demandado Avelino F. Carrión había sido destituído dos veces, con anterioridad a la inscripción de su nombre como candidato, del cargo de miembro de la Policía Insular, la primera vez por mala conducta y la segunda por conducta inmoral y por haber jurado a sabiendas y falsamente, con el propósito de reingresar en el cuerpo de la Policía Insular, que nunca había sido destituído del cargo de policía y que había cesado en él por expiración del tiempo por el cual fué nombrado. En cuanto a Salvador Vargas se alega que fué acusado ante la Corte Municipal de Fajardo por el delito de infracción al artículo 162 del Código Penal del que fué declarado culpable y que por él fué condenado a reclusión en la cárcel municipal de Fajardo, ordenando también el tribunal que su nombre fuera eliminado de las listas electorales del municipio de Fajardo. Con respecto a Ramón Piñeiro la demanda expone que también fué acusado ante la misma corte por igual delito que Vargas y que fué declarado culpable siendo condenado a reclusión en la cárcel municipal, ordenándose asimismo que su nombre fuera eliminado de las listas electorales del municipio de Fajardo. En la alegación quinta de la demanda se dice además que esas sentencias contra Vargas y Piñeiro fueron dictadas en 30

de agosto de 1920 y 3 de septiembre de 1920, respectivamente; que fueron cumplidas por esos demandados en la cárcel municipal de Fajardo y que fueron notificadas a la Junta Insular de Elecciones, que verificó la eliminación de los nombres de los expresados demandados de acuerdo con los términos de las sentencias ameritadas. Se expone también en la demanda que esos motivos de ineligibilidad e incapacidad de los demandados eran bien conocidos por el electorado y por toda la comunidad de Fajardo porque las sentencias fueron dictadas por la Corte Municipal de Fajardo en el curso de un juicio público con numerosa concurrencia de ciudadanos por el carácter sensacional que en la comunidad tenían los procesos criminales contra Vargas y Piñeiro y porque esas sentencias, y en especial el particular en que se ordenó la eliminación de los demandados de las listas electorales, fueron objeto de pública propaganda en las tribunas y que por distintos medios de publicación se hizo saber personalmente a los electores que toda persona que votara la candidatura socialista de Fajardo perdía su voto en cuanto a los candidatos demandados se refiere, pues la destitución de Avelino F. Carrión de miembro del cuerpo de la Policía Insular por actos delictivos y conducta inmoral eran también conocidos por los electores de Fajardo y habían sido, como las sentencias dichas, objeto de general comentario y advertencia en Fajardo durante el período electoral. Asimismo se alegan las condiciones personales de elegibilidad de los tres demandantes y que fueron los candidatos derrotados en las elecciones por los tres demandados pero que siendo nula e ineficaz la elección de éstos por las razones dichas los demandantes fueron realmente elegidos porque los votos emitidos a favor de cada uno de los demandados no pueden contarse en su beneficio, por lo que procede considerar la candidatura del partido socialista de Fajardo como si los nombres de los demandados no hubieran sido incluídos en ella y sus puestos permanecieran en blanco por lo que debe pro-

clamarse electos a los tres demandantes en defecto de los demandados a los que siguen en el número de votos entre los no elegidos según el escrutinio anunciado oficialmente por la Junta Insular de Elecciones.

Las alegaciones de la demanda muestran claramente que la teoría en que los demandantes fundan su derecho es la de que la incapacidad de los tres demandados para ser elegidos como miembros de la Asamblea Municipal de Fajardo produce el resultado de que no deben contarse los votos que obtuvieron y que por consiguiente corresponde desempeñar esos cargos a los tres demandantes porque siguieron en el número de votos a los tres demandados. Por su parte los demandados apelantes sostienen que la teoría de los demandantes, que es conocida como la regla inglesa, no ha sido aceptada por los tribunales americanos los que, por el contrario, con excepción de muy pocos, declaran que la elección de una persona incapaz para desempeñar el cargo no da derecho al contrario derrotado para ocupar el puesto de aquél y que por tanto la demanda basada en esa teoría no aceptada no alega hechos determinantes de acción a favor de los demandantes.

La regla inglesa referida ha sido aceptada por muy pocos tribunales de los Estados Unidos pues casi la totalidad de los que han tenido que resolver cuestiones como la que estamos considerando la han rechazado enérgicamente como contraria a los principios de la forma republicana de los Estados Unidos. Así encontramos que según *McCrary on Elections,* página 248, 20 C. J. 207, notas 43–48 y 9 R. C. L. 1126, mientras ha sido aceptada en Indiana, en algún caso de Ohio y de New York, y recientemente en Wisconsin, ha sido rechazada por el Congreso de los Estados Unidos y en Arkansas, California, Georgia, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Michigan, Minnesota, Missouri, Mississippi, Montana, Nebraska, New Jersey, North Carolina, North Da-

kota, Pennsylvania, Rhode Island, South Dakota, Vermont, West Virginia y Puerto Rico.

En vista del número de decisiones contrarias a la regla inglesa en los Estados Unidos podemos concluir que la casi totalidad de los tribunales de la Unión Americana están en contra de su adopción, según declara McCrary en la página 249 de su obra citada, y así, aunque en el reciente caso del año 1910 de *State ex rel. Brancroft* v. *Frear,* 144 Wis. 90, cuatro de los siete jueces de ese tribunal dijeron que el peso de la autoridad, inglesa y americana, sostiene que los votos dados a un candidato sabiendo que no podrá ejercer las funciones para que es electo son considerados como nulos, los tres jueces disidentes declararon que la regla de los casos contrarios tiene el peso de la autoridad en el país.

No cabe pues duda de lo dicho teniendo en cuenta el número de decisiones, pero si examinamos los argumentos aducidos para rechazar esa regla y para sostenerla, encontraremos muy justificada la actitud contraria a su adopción. Así, ya en el año 1859 la Corte de California, en el caso de *Sanders* v. *Haynes,* 13 Cal. 153, dijo:

"Se observará que la defensa se funda en que los votos dados a Turner, suponiendo que él recibió el mayor número, son nulos a causa de su inelegibilidad. No lo creemos así. Aunque en algunos casos antiguos puede encontrarse sostenida esta doctrina, creemos que la mejor opinión ahora es que no es correcta. La importante controversia en el Parlamento Británico entre Wilkes y Luttrel ha suscitado mucha discusión, y las opiniones de los juristas y de los políticos se hallan divididas. Pero la opinión prevaleciente, inglesa y americana, en los tiempos modernos, parece ser contra el precedente establecido en ese caso. En el caso de Whitman y Melony, (10 Cal. 38) el Juez Presidente Field claramente declara su opinión en favor del principio de que los votos dados a un candidato inelegible no se cuentan al candidato que le sigue en número. En *State of Wisconsin* v. *Giles,* (1 Chand 117) se sostuvo la misma doctrina, que fué robustecida por los Jueces de la Corte Suprema de Maine, en su opinión, que se encuentra en 38 Mo. 597. Nuestros precedentes legislativos parece que siguen el mismo rumbo. Como principio, pensamos que

así debe ser la ley. Una elección es la deliberada selección de una mayoría o de una pluralidad de los electores. Esto se demuestra por los votos de los electores. Pero si la mayoría de esos votos, por equivocación de la ley o de hecho, se dan a un candidato inelegible de ningún modo se sigue de aquí que el siguiente a él en el número de votos debe ocupar el cargo. Si así se hiciera, puede ser electo un candidato que haya recibido un pequeño número de votos y que sin esa equivocación nunca hubiera sido electo. Los votos no son menos legales porque se hayan dado a una persona en cuyo favor no puedan ser contados y la persona que le sigue en la lista de candidatos no recibe una pluralidad de votos porque su contrario sea inelegible. Los votos dados a éste ciertamente que no pueden contarse en su beneficio, pero esto no es razón para que se cuenten a favor de su contrario, quien posiblemente no los hubiera recibido. Es más claro, más justo y más consistente con la teoría de nuestras instituciones declarar que esos votos no tienen efecto para la elección que darles el efecto de desagradar la voluntad popular y declarar electo para el cargo a un hombre cuyas pretensiones ha rechazado el pueblo.''

Esta doctrina fué sostenida por dicha corte en el año 1877 en el caso de *Crawford* v. *Dunbar,* 52 Cal. 41.

En la obra que hemos citado del Sr. McCrary, página 249, después de citar los casos en que se ha considerado y rechazado la regla inglesa, dice:

''Así se verá que el peso de la autoridad en este país está decididamente contra la adopción en él de la doctrina inglesa. Y creemos que la sana política así como la razón y la autoridad, prohiben la adopción de esa doctrina en este país. Es una idea fundamental entre nosotros el que la mayoría, o por lo menos una pluralidad, es la que elija a una persona para un cargo público, mediante el voto popular. Entre nosotros una elección es la deliberada preferencia de una mayoría o de una pluralidad de electores. Cualquier doctrina que abra el camino para un gobierno por la minoría en cualquier caso es anti-republicana y anti-americana. La regla inglesa, si nos adherimos a ella, tendría en muchos casos el efecto de compeler a grandísimas mayorías a someterse a pequeñísimas minorías, puesto que una persona inelegible puede recibir, y en muchos casos ha recibido, una gran mayoría de votos. Basta, en tal caso, con declarar nula la elección. La misma cuestión fué ampliamente discutida y

resuelta, en lo que respecta al Senado de los Estados Unidos, en el caso de Joseph G. Abbot de North Carolina. La decisión en ese caso fué contra la adopción de la regla inglesa en este país y Abbot, que a pesar de haber recibido una minoría de los votos emitidos reclamaba el asiento en aquel cuerpo por el fundamento de que fué la única persona elegible por la cual se votó, fué declarado no electo. Y se afirmó taxativamente en el informe del comité que el hecho de que los electores tengan aviso de la inelegibilidad del candidato al emitir sus votos a su favor, nada importa. La observación hecha por el Juez Strong en *Commonwealth* v. *Cluley,* (56 Pa. St. 270) en el sentido de que 'la persona incapacitada es, sin embargo, una persona y que cada voto que se le da es válido' se cita con aprobación. La amplia doctrina de que en este país la elección por una minoría de las personas que votan no será tolerada bajo ninguna circunstancia fué afirmada. El Sr. Carpenter, de la minoría del comité, presentó un informe cuidadoso sosteniendo el derecho del Sr. Abbot al puesto, siendo amplio el debate, pero el Senado sostuvo a la mayoría del Comité.''

Sobre la misma cuestión se dice en 15 Cyc., página 391, con citas de numerosos casos, lo siguiente:

''Es una idea fundamental de la política americana que la mayoría es la que gobierna y que ninguna persona puede ser electa a un cargo a menos que reciba una mayoría o, por lo menos, una pluralidad de todos los votos. Consiguientemente, se ha establecido por la Cámara de Representantes de los Estados Unidos que la inelegibilidad del candidato que reciba el mayor número de votos no da derecho al candidato que reciba el siguiente número mayor de votos, aún cuando la elección se celebre en un Estado en que prevalezca la regla contraria. La misma regla se ha adoptado por el Senado de los Estados Unidos y tiene el apoyo del gran peso de la autoridad judicial en los Estados Unidos.''

Por nuestra parte este Tribunal Supremo en el año 1906, en el caso de *Domenech* v. *Moret,* 13 D. P. R. 99, consideró la misma cuestión y rechazó la regla inglesa al sostener la sentencia apelada que declaró sin lugar la demanda por dos razones, siendo una de ellas que ''Si un candidato es inelegible las cortes deben declararlo así por medio de un pro-

cedimiento adecuado, no pudiendo el resultado de tal acción, tomada por la corte, servir para elegir al candidato que le sigue en orden;'' argumentación que no puede considerarse como *obiter dictum* en ese caso como sostienen ahora los apelados porque fué una de las razones por las cuales se resolvió la apelación. En esa opinión se citaron los casos de *Saunders* v. *Hayne,* 13 Cal. 154 y de *Crawford* v. *Dunbar, supra,* y si bien es cierto que en el primero de ellos disintió uno de los jueces del parecer de los otros dos, sin embargo, la opinión de la mayoría fué ratificada al resolver la reconsideración que de ella se pidió y en el otro caso fué confirmada la doctrina por los votos de todos los jueces. Además, según hemos visto antes, la casi totalidad de los Estados que han considerado esta cuestión ha rechazado la regla inglesa.

Para sostener la teoría de que debemos adoptarla en este caso alegan los apelados que requiriendo nuestra Ley Electoral que los candidatos por petición, como son los demandados, presenten con la petición una declaración jurada manifestando que son elegibles, lo que demuestra la voluntad del legislador de que en la papeleta electoral no figuren candidatos inelegibles, sostener que puedan ser electos sería establecer o admitir el contrasentido jurídico de que las leyes favorecieran su propia infracción. Es cierto que la ley persigue con esa disposición que en las listas electorales figuren solamente personas que tengan la condición de elegibles, pero el hecho de que por un motivo o por otro llegue a figurar en las papeletas electorales una persona incapacitada para ser electa producirá la nulidad de su elección, no se le contarán los votos obtenidos por ella, pero este no trae como consecuencia lógica que se entienda que no fué votada, cuando en realidad obtuvo el mayor número de votos, y que por tanto se entienda que sólo obtuvo votos el que le siguió en número aunque el resultado de la elección demuestre que no obtuvo los votos de la mayoría.

Otra razón de los apelados es que siendo el voto obliga--

torio, no para la acción negativa de derrotar al adversario sino para la positiva de elegir, el elector debe elegir en cada municipio un determinado número de personas para miembros de la asamblea municipal y que sabiendo los electores en Fajardo que los tres demandados no tenían capacidad para ser electos, al votar por la candidatura socialista en la que figuraban los tres demandados votaban por todos los candidatos de ella menos por los tres demandados porque legalmente no estaban en la candidatura. Según los hechos de la demanda los apelantes no eran elegibles, no tenían derecho a estar en la candidatura, pero el hecho es que estaban en ella por no haber sido sustituídos por otros por lo que de acuerdo con la ley debían figurar en la papeleta electoral y así no puede sostenerse que legalmente no estaban en ella, que no fueron votados y que por esto los demandantes obtuvieron el mayor número de votos y deben ocupar los cargos que reclaman. Lo cierto es que los demandados obtuvieron la mayoría de los votos.

El argumento de que por conocer los electores la inelegibilidad de los demandados deben entenderse electos los que les siguieron en número de votos, plantea francamente la petición de que adoptemos la regla inglesa de la cual hemos tratado antes y que hemos visto no ha sido aceptada en los Estados Unidos de América ni por este tribunal, según el caso citado de *Domenech* v. *Moret*. Pero se sostiene que después de esta sentencia, y tal vez como consecuencia de ella, la Legislatura enmendó la Ley Electoral en el sentido de que si la incapacidad o muerte de un candidato debidamente nombrado ocurriese después de las doce del día del 11 de octubre su nombre permanecería en la candidatura de su partido y si recibiera el mayor número de votos para el cargo se declararía éste vacante y se proveería tal y como dispone la ley. (Sección 39 *a*, Leyes de 1908, página 88, reproducida en las Leyes de 1919, página 565.) Basta la lectura de este precepto legal para quedar convencido de que

según la ley puede estar en la candidatura una persona inelegible pudiendo recibir los votos de los electores aunque con el resultado de que su puesto se declarará vacante, sin que por causa de esa incapacidad ocupe su puesto la persona que le siga en el número de votos. Opinamos que por la citada enmienda no se ha establecido diferencia entre el caso presente y el de *Domenech* v. *Moret, supra,* como sostienen los apelados, pues se limitó a declarar cómo había de procederse en caso de incapacidad del candidato ocurrida después de las doce del día del 11 de octubre; y el hecho de que en este caso la incapacidad de los demandados ocurrió antes de esa fecha, sin que fueran sustituídos por otros propuestos por el comité o junta debidamente autorizado o facultado para representar al partido en tales casos, como dispone la ley para cuando la incapacidad ocurre antes del día 11 de octubre, no favorece a los demandantes para ocupar los cargos de aquéllos, pues por el hecho de que la Ley Municipal exija que se declaren electos a los que hayan recibido el mayor número de votos hasta completar el número total de miembros que componen la Asamblea Municipal no puede sostenerse que los demandantes obtuvieron la mayoría de votos, aunque luego resulte que la elección de los demandados sea nula.

Como último argumento se alega por los apelados que por haber adoptado nuestra Legislatura el sistema australiano de elecciones, que es de origen inglés, debe ser de aplicación la regla inglesa a que venimos refiriéndonos y que los tribunales de la Unión han ido aceptándola al adoptar el sistema australiano. Este sistema regula el procedimiento electoral pero en nada se refiere en cuanto a que la vacante de un inelegible debe ser ocupada por el candidato derrotado y en cuanto al segundo particular, si bien es cierto que en 9 R. C. L., párrafo 127, página 1126 se dice que se ha declarado en un reciente caso que el peso de la autoridad, tanto inglesa como americana, sostiene que cuando los electores

votan por un candidato sabiendo que no puede, posiblemente, ejercer sus funciones, los votos son perdidos, citando para sostener esa opinión, el caso de *State* v. *Frear,* 144 Wis. 79, 128 N. W. 1068, 140 A. S. R. 992, sin embargo en ese caso la resolución se tomó por cuatro jueces contra tres.

Como resumen de la cuestión que venimos estudiando queremos decir que hemos consignado con alguna amplitud las opiniones que rechazan la doctrina inglesa porque expresan claramente las poderosas razones que hay en nuestro sistema político para rechazar, como rechazamos, la doctrina de la regla inglesa, y que por nuestra cuenta poco más podríamos decir, como no sea que a nuestro entender el hecho cierto de la elección de un candidato, aunque sea incapaz para desempeñar el cargo, no puede ser destruído por la teoría más o menos ficticia de que por conocer los electores la incapacidad del candidato no votaron por él, cuando la verdad es que le dieron el mayor número de votos. Podrá quedar vacante ese cargo pero no puede por ese motivo conferírsele el puesto al candidato que le siguió en el número de votos, que fué rechazado por la mayoría de los electores.

Por las razones expuestas la demanda no aduce hechos determinantes de acción para que por la incapacidad de los demandados ocupen sus puestos los demandantes y debe ser desestimada, pues aún prescindiendo de este extremo de la demanda, tampoco pueden los demandantes discutir en el procedimiento de impugnación de elecciones la incapacidad de los demandados para ocupar los puestos para que fueron electos pues, como dijo este tribunal en el caso de *Domenech* v. *Moret* tantas veces citado, "en cuanto a la acción contra la cual se ha interpuesto el recurso de apelación equivale a un procedimiento con arreglo a la ley, prescribiendo la forma de impugnación de elección de funcionarios, etc.," aprobada en marzo 7, 1907 (debe ser 1906), tal procedimiento no puede prosperar pues esa ley por sus propios términos

es aplicable a casos en que el contendiente o demandante tiene derecho a ser declarado electo si tuviere éxito.

La sentencia apelada debe ser revocada y dictarse otra declarando sin lugar la demanda.

> *Revocada la sentencia y desestimada la demanda sin especial condena de costas.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Hutchison.