THOMAS B. LOVE v. MURRELL L. BUCKNER AND CHAS. L. WAKEFIELD ET AL.

No. 6174.  Decided April 21, 1932.
(49 S. W., 2d Series, 425.)

*Thomas B. Love,* in pro per, *H. Bascom Thomas,* both of Dallas, and *Dan Moody,* for appellant.

An executive committee of a political party is an agency of limited powers and its express powers are confined to those conferred upon it by statute, and those lawfully granted to it by the party; and its implied powers are limited to such as are reasonably necessary to the exercise of express powers lawfully granted and to the performance of duties, lawfully imposed. Briscoe v. Boyle, 286 S. W., 275; Love v. Wilcox, 119 Texas, 256, 28 S. W. (2d) 515; Gilmore v. Waples, 108 Texas, 167, 188 S. W., 1037.

Article 3110 applies to primary elections held for the purpose of nominating candidates for state and local offices and prescribes the only pledge which may be lawfully required as a prerequisite to voting in a Democratic primary election. The test provided by this Article does not apply to conventions held under Article 3167. Love v. Wilcox, 119 Texas, 256, 28 S. W. (2d) 515.

*Albert Sidney Johnson, J. Hart Willis, Harold Young, Wm. Andress, Jr.* and *C. C. Renfro,* all of Dallas, for appellees.

The Democratic party has the inherent right, in the absence of a forbidding statute, to regulate and control its primary presidential conventions, including the requirement of an appropriate pledge of party membership, fealty and loyalty.

There being no provision of law interdicting the proposed action of the State Democratic Executive Committee, no legal right of the appellant or proponent can be said to be threatened with impairment, and the case presents merely a party dispute which the courts will remit to the party forum. Grigsby v. Harris, 27 (Fed.), 942; 9 R. C. L., p. 1086, sec. 96; Gilmore v. Waples, 108 Texas, 167, 188 S. W., 1037; White v. Lubbock, 30 S. W. (2d) 722; Sanitary Appliance Co. v. French, 34 S. W. (2d) 673.

*M. M. Crane,* of Dallas, as amicus curiae.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Certified Questions from the Honorable Court of Civil Appeals of the Fifth Supreme Judicial District of Texas.

The Dallas Court of Civil Appeals has certified to the Su-

preme Court for its determination the question whether the Democratic State Executive Committee had lawful authority to require otherwise lawfully qualified and eligible Democratic voters to take the pledge specified in the resolution adopted by the committee at its meeting in March, which reads:

"BE IT RESOLVED: That no person shall be permitted to participate in any precinct or county Democratic convention in Texas, held for the purpose of selecting delegates to the state convention of the Democratic party, at which national delegates are selected to represent Texas democracy in the national Democratic convention, unless such person be willing to take, and shall in good faith actually take, a written pledge as follows, to-wit:

" 'I hereby pledge myself to support the nominee of the Democratic party for president and vice-president of the United States, by voting for the Democratic electors of the State of Texas.'

"That a copy of this resolution be furnished to each county chairman, with instructions to forward copies thereof to each precinct chairman, for the purpose of requiring said pledge of all delegates participating in the respective precinct and county conventions aforesaid."

The Court answers that the Democratic State Executive Committee was authorized to require the voters to take the specified pledge.

The committee's power to require a pledge is contested on the ground that the committee possesses no authority over the conventions of its party not granted by statute, and that the statutes of Texas do not grant, but negative, the committee's power to exact such a pledge.

We do not think it consistent with the history and usages of parties in this State nor with the course of our legislation to regard the respective parties or the state executive committees as denied all power over the party membership, conventions, and primaries save where such power may be found to have been expressly delegated by statute. On the contrary, the statutes recognize party organizations including the state committees, as the repositories of party powers, which the Legislature has sought to control or regulate only so far as was deemed necesasry for important governmental ends, such as purity of the ballot and integrity in the ascertainment and fulfillment of the party will as declared by its membership.

Without either statutory sanction or prohibition, the party must have the right to adopt reasonable regulations for the en-

forcement of such obligations to the party from its members. as necesasrily arise from the nature and purpose of party government. The pledge here attacked requires nothing further than that those who would participate in the precinct or county Democratic conventions in May should express a present intention to support the party nominees for President and Vice President by voting for the party's candidates for electors.. More than ten years ago, the Supreme Court declared that every participant in a party convention or primary was obligated to support the party's nominees, even though such support was not expressly pledged or promised. Speaking of the test ordered printed on primary ballots by the article of the statutes then numbered 3096 (R. S., 1925, art. 3110), whereby the voter pledged support to party nominees, the Court said:

"For many years such a test was required in party primaries while under no statutory regulation. The object of the test, when so required by party managers, was simply to determine the voter's qualifications to have a part in choosing the candidates of the party or in dictating its policies.

"It is not believed that the Legislature can in reason be said to have had a different object in the enactment of article 3096. The purpose of the Legislature was the same as the pre-existing purpose of the party managers, and that was to exclude from party action all persons save those holding a present party allegiance and having a bona-fide present intention to support the party nominees. * * * In our opinion, a. voter cannot take part in a primary or convention of a party, to name party nominees, without assuming an obligation binding on the voter's honor and conscience. Such obligation inheres in the very nature of his act, entirely regardless of any express pledge, and entirely regardless of the requirements of any statute. * * * Being unenforceable through the courts the obligation is a moral obligation." Westerman v. Mims, 111 Texas, 37, 38, 227 S. W., 178.

The opinion in Westerman v. Mims quoted with approval the decision of the Supreme Court of Louisiana in the case of State ex rel. Labauve v. Michel, Secretary of State, 121 La., 374, 46 So., 430, to the effect that "the voter, by participating in the primary, impliedly promises and binds himself in honor to support the nominee, and a statute which exacts from him an express promise to that effect adds nothing to his moral obligation, and does not undertake to add anything to his legal obligation. The man who cannot be held by a promise which

he knows he has impliedly given will not be held by an express promise."

■ We are forced to conclude that it would not be beyond the power of the party through a customary agency such as its state executive committee to adopt regulations designed merely to enforce an obligation arising from the very act of a voter in participating in party control and party action, though the statutes were silent on the subject.

With regard to the state committee's power to exact this pledge the statutes are by no means silent. The statutes do not deny the power but plainly recognize and confer same. Instead of inviting all qualified voters into all party conventions, the Penal Code makes it a crime for any voter to vote or to offer to vote at a convention of any political party having voted on the same day in a convention of an opopsing party. P. C., Art. 240. Furthermore, the statute expressly regulating the presidential precinct conventions, instead of providing that such conventions shall consist of all qualified voters, defines those entitled to participate therein as the voters of the particular party holding the convention. The statute reads: "Any political party desiring to elect delegates to a national convention shall hold a state convention at such place as may be designated by the state executive committee of said party on the fourth Tuesday in May, 1928, and every four years thereafter. Said convention shall be composed of delegates duly elected *by the voters of said political party* (italics ours) in the several counties of the State at primay conventions to be held on the first Saturday in May, 1928, and every four years thereafter. Said primary conventions shall be held between the hours of ten o'clock A. M. and eight o'clock P. M. These primary conventions shall elect delegates to the county conventions of the several counties which shall be held on the first Tuesday after the first Saturday in May, 1928, and every four years thereafter." It is true the statute forbids participation in the precinct primary conventions of those who are not certified qualified voters, but the only voters referred to throughout the article as comprising the precinct primary convention, and who can determine the real and effective party decisions, are the *"voters of said political party."* Article 3167, Complete Texas Statutes, 1928.

■ If article 3167 of the Civil Statutes and article 240 of the Penal Code were the sole statutes on the subject, we would have no difficulty in upholding any reasonable party regulation

for making effective the legislative intent to confine the membership of the convention of a party to persons willing to affirm a present, bona fide purpose to support the nominees of such party. Were we in doubt on this point, the doubt would be removed by the express terms of article 3107 of the Complete Texas Statutes, that: "Every political party in this State through its State Executive Committee shall have the power to prescribe the qualifications of its own members and shall in its own way determine who shall be qualified to vote or otherwise participate in such political party," with certain provisos not claimed to relate to the certified question. We are bound to give effect to a grant of power to the State Executive Committee of a party to determine who shall participate in the acts of the party otherwise than by voting in a primary, when the Legislature grants the power in language too plain to admit of controversy, and when the determination of the committee conflicts with no other statutory requirement or prohibition, especially when the committee's determination makes effectual the public policy of the State as revealed in its statutes.

The decision in Love v. Wilcox, 119 Texas, 256, 28 S. W. (2d) 515, gave effect to the legislative intent by vacating action of the State Committee violative of express and valid statutes. Our answer to the certified question likewise gives effect to the legislative intent in upholding action of the State Committee in entire accord with the governing statutes as well as with party custom.