## DUNAGAN v. JONES et al.
### No. 4848.

Court of Civil Appeals of Texas. Texarkana.
Sept. 27, 1934.

Rehearing Denied Oct. 1, 1934.

Moore & Moore, of Parris, and Wm. Hodges, of Texarkana, for appellant.

Edgar Wright, of Paris, for appellees.

LEVY, Justice (after stating the case as above).

The real question in the appeal arises of whether or not in the special circumstances it may be adjudged that the contestant was lawfully nominated as a candidate for the office of county commissioner for precinct No. 2 of Lamar county. Whatever may be the county or precinct office, the nomination to it could be only made by a majority vote, upon such decision by the county executive committee made and entered, as here done, prior to the date of the general primary election. Article 3106, R. S. By the express provisions of that statute upon such decision the vote required to constitute an election to a particular office if that of a majority of the votes cast at such election, meaning, as is evident, a majority of all the votes cast at the primary election for all candidates for such office. As contemplated, the result shall be decided by a majority of the votes cast, of the qualified voters voting at such election whose ballots are entitled by law to be counted in declaring the result of the election. As appears in the present case, the votes cast in the general primary election for the office of county commissioner of precinct No. 2 aggregated 1,886 votes. The voters were qualified voters of the political party and under the statute and it was not shown nor claimed that any of them were not legal voters. The contestant received 915 votes of the 1,886 votes, which number of votes, as a matter of fact and of mere calculation, was not a majority of all the votes cast, entitling him to the certificate of nomination. That statement and fact alone must be held conclusive of this appeal and of the contest, unless in determining the total vote upon which a majority is to be based the votes cast for the contestee may not figure in the result and should not be counted. Her name was not printed on the official ballot under the office, but 923 Democratic voters voted for her on the day of the election by each one writing her name on the official ballot under the proper office.

Ordinarily, express provision is made by statute as to the form, requisites, preparation, and furnishing of ballots by means of which the voter may record his choice. And in this state there is such statutory provision as to general primary elections. The requirement, besides others, is that the name of all candidates shall be printed beneath the office for which the nomination is sought. Article 3109, R. S. Any candidate for county office is expressly given the right to have his name appear printed on the official ballot of the primary election upon written request signed and acknowledged and filed with the county chairman not later than Saturday before the third Monday in June preceding such election. Article 3113. And further, as a condition precedent, the county candidate must pay to the executive committee the amount of the estimated expenses of holding the primary apportioned to him. Article 3116, R. S. Since statutory provisions as to the preparation of the ballot and as to the printed names to appear thereon must be strictly followed (20 C. J., § 164, p. 141), the right of a candidate to have his name printed on the official ballot would not be evident in case of failure to timely fulfill the requirements of the statute, and his application for mandamus would probably be denied by the court. In such case of default in the compliance of the fair and reasonable restrictions, the candidate would not have the right as personal to him of legal relief in the courts to compel the printing of his name on the official ballot. But the purely personal rights of the candidate in the respect mentioned is quite apart and distinct from and does not measure the right of the voter to indicate his choice of a person for the nomination of a particular office. There is a well recognized difference between the rights and duties of candidates in having their names printed on the official ballot, and the legal right of the voters in choosing their nominees on the day of the general primary election. The legal effect is not necessarily attaching of invalidity of the ballot as to that particular office and rendering his vote not subject to be counted, of a qualified voter writing the name of a person on the ballot under a particular office. In the light of the history of the adoption generally of the method of official ballot, the present legislative provisions as to the requirement of the use of the official ballot in the primary election may be regarded as adopted rather for the benefit of the voter, and as a safeguard to the purity of elections, than for the personal benefit only of the candidate.

The decision of the question varies, according to the phraseology of the statutes, of whether a voter may vote for a person whose name is not printed on the official ballot by writing his name under the particular office.

While the primary law of this state does not contain direct authority to vote by writing a name on the official ballot, yet the primary law does not forbid the making of nominations in that manner. The statute simply provides that "the vote at all general primaries shall be by official ballot," and that "the voter shall erase or mark out all names he does not wish to vote for." Article 3109, R. S. There is no provision that county candidates must be chosen by the voters only from those names that are printed on the official ballot. It is, therefore, believed that the statute should be so construed as to leave the voter with free choice upon his own volition to erase or mark out all printed names and write in the name of a person not on the ballot under the particular office. The fundamental principle of the direct primary is to have expression of the popular will by voting for the persons freely chosen by them as nominees for the particular offices. The voice of the people becomes of legal force when expressed at the time and under the conditions which have been prescribed and pointed out for them by statute, or as allowed by existing law. There appearing no legal reason why at the election any voter who chose to do so should not vote for the contestee, there is no escape from the conclusion that the contestant was not at all events nominated for the particular office. If he was not elected, he cannot have the contestee ousted from the certified nomination in this proceeding.

The question decided is one of first impression in this state, and authorities of other cases are not here cited as being without application.

█ As to whether or not the contestee may be declared to have received a majority of all the votes cast, and be awarded the nomination, as the certificate of the executive committee had the effect of doing, must depend only upon whether the 48 votes cast for Roy H. Dunagan, deceased, can be considered of effect in determining the result. The principle would seem applicable that in case of death after the ballots are printed and timely before the day of the primary election and the death is generally known to the voters, the votes cast for the man who died may not be counted. See 9 R. C. L., § 127, p. 1126; 20 C. J., § 267, p. 207, and cases there cited. The thought is that votes are treated as blank votes when the voters know that the person voted for is dead and cannot possibly qualify for the office. The effect given to such votes is that of a deliberate intent to waste it. The voter has no right to complain of the loss of his franchise, the exercise of which he has wantonly misapplied. In the present case the findings of fact show that the death of Mr. Dunagan was notorious and very generally known in the county, especially precinct. In the absence of a statement of facts, it may not be held by this court that the particular 48 voters did not know of the fact of the death. Such finding of fact is involved in the trial court's conclusion, and this court would not be warranted in holding as a matter of pure law that such finding is not warranted.

Article 3019 is inapplicable to the present case and would not furnish the rule for a contrary holding that the votes cast for Mr. Dunagan should be counted. The article reads:

"If a nominee dies or declines the nomination before the election, and no one is nominated to take his place, the votes cast for him shall be counted and return made thereof; and, if he shall have received a plurality of the votes cast for the office, the vacancy shall be filled as in case of a vacancy occurring after the election."

The article is exclusively dealing with filling vacancies by the party committee where the nominee by a plurality vote in the general primary shall die or decline the original nomination before the date of the general election following. In effect and meaning, where a candidate in the primary election is originally nominated by a plurality vote and dies or declines the original nomination before the date of the general election following, the name of such nominated candidate shall be dropped or removed from the party ticket, and a vacancy declared which shall be filled by the party committee. The party committee in the absence of the statute would have no power to declare the vacancy and make a nomination of another for the particular office. Plainly the article does not refer nor can be made referable to votes cast for a person who dies before the original nomination is made by the party voters under the special circumstances of the present case.

The judgment is reversed, and judgment is here entered awarding the nomination to the contestee and adjudging the validity in all respects of the certificate of nomination issued by the chairman of the Democratic executive committee of Lamar county. The costs of the proceeding on appeal and in the trial court are taxed against the contestant, J. Frank Jones.