## VARELA v. PERALES.

### No. 4413.

Court of Civil Appeals of Texas. El Paso.

Oct. 5, 1944.

Cunningham, Ward & Cunningham, Burges, Burges, Scott, Rasberry & Hulse, and W. H. Fryer, all of El Paso (W. H. Burges, of El Paso, of counsel), for appellant.

E. B. Elfers, Ernest Guinn, and R. L. Holliday, all of El Paso, for appellee.

PER CURIAM.

This is a contest of the result of the Democratic Primary Election between Rafael Varela and Jesus Perales over the nomination for Constable, Justice Precinct No. 8, El Paso County, Texas. Contestant Varela and contestee Perales were each

candidates for nomination for that office in the Run-off Primary held on August 26, 1944. Justice Precinct No. 8 and Voting Precinct No. 36 embrace the same area. On canvass of the votes, the County Executive Committee found Perales had received sixty votes and Varela fifty-nine. Acting through its chairman, the Committee duly certified to the County Clerk that Perales had received the majority of the votes and was the nominee of the Democratic Party. In due time Varela filed in the District Court this contest. That Court, after hearing the contest, entered judgment in favor of Perales.

There is no disagreement as to the facts herein.

The ballots furnished the judges as official ballots for the conduct of the election had the following test printed thereon:

"I am a Democrat and pledge myself to support the nominee of this Party."

Article 3110, R.S.1925, is as follows:

"No official ballot for primary election shall have on it any symbol or device or any printed matter, except a uniform primary test, reading as follows: 'I am a ...... (inserting name of political party or organization of which the voter is a member) and pledge myself to support the nominee of this primary;' and any ballot which shall not contain such printed test above the names of the candidates thereon, shall be void and shall not be counted."

One hundred and nineteen ballots were voted and counted at the election. All of these ballots had printed thereon the test as above set forth. Two voters, however, scratched out the word "Party" and in lieu thereof wrote the word "Primary," making the test, when so altered, literally comply with Article 3110. These two voters voted for Varela, and such votes were duly counted in his favor.

The position of Varela here is that the sixty ballots in favor of Perales should not be counted, for the reason that the test printed thereon was not in accordance with Article 3110; that only two legal votes were cast at the election. These two were the two voters altering the printed test by substituting the written word "Primary" for the printed word "Party." An alternative contention is made that the election was void.

Perales contends that, although the test on the ballot varied in the particular claimed from that required by Article 3110, the language used had the same meaning as that required by the statute.

■■ At a primary the elector may use only the official ballot, his choice being indicated thereon in a manner prescribed by law. He may make no material change in the official ballot, save he be authorized by law so to do. Of course, his choice is not limited to those whose names are printed upon the ballot. The law authorizes him to scratch the names appearing thereon and indicate his choice by writing in any name. Dunagan v. Jones, Tex.Civ. App., 76 S.W.2d 219. This is the only alteration or addition he is legally entitled to make. In a run-off, it has been held that the voter has not this privilege. Cunningham v. Queen, Tex.Civ.App., 96 S.W. 2d 798.

Under the Election Law it is the duty of the County Executive Committee to cause the ballots to be printed. See Article 3109. This article minutely prescribes the mode of making up such ballot. Article 3110 excludes any other matter therefrom, save the party test therein prescribed.

■■ The Primary Election Law confers the right and privilege on a political party to have the names of its candidates appear on the face of the official ballot in the governmental election. In order to so exercise this privilege and right, the party and its candidates must comply with the law. The furnishing of an official ballot under Article 3109 is strictly a party matter, a matter in which the party acts through the executive committee. No means is provided whereby the elector may prepare a ballot for himself; no authorization for a candidate or candidates to have any supervision over the preparation thereof. The elector marks the ballot, but it is the ballot delivered to him by the election judge, not one prepared by the elector. The only lawful way the elector may get possession of a ballot for the purpose of voting is from that official. The election judges get the election ballots from the county executive committee.

■ To be determined is the validity of the other one hundred and seventeen ballots. A proper answer depends upon a determination of the effect of the departure from the statute in the wording of the printed pledge. "I am a Democrat and pledge myself to support the nominee of

this primary" was the test required by the statute. "I am a Democrat and pledge myself to support the nominee of this Party" was the test actually printed on the ballots. In the formulation and printing of the ballots the party official acted ministerially as to the test required to appear on the ballot. Love v. Wilcox, 119 Tex. 256, 28 S.W.2d 515, 70 A.L.R. 1484. The test is not a test exacted by the party, but by the law of the State. Beyond question, the test did not literally follow the requirement of the statute.

In the case of Westerman v. Mims, 111 Tex. 29, 227 S.W. 178, a question was before the Supreme Court as to the test on the ballot, but not the legality of votes in relation to the test. There the elector had pledged himself on the ballot to support the nominee of the primary. The statute required as a part of the test that the elector pledge himself to support the nominee of "this primary." Neither the opinion of the court nor the dissenting opinion of the Chief Justice of the Court mentioned this slight variation. A legitimate deduction is, we think, that the words "the primary" were construed equivalent to "this primary."

"This party" may have a broader and more unrestricted meaning than "this primary." The former words and meaning include the latter. All nominations by the party to which the words applied were made by primary election, save those of presidential electors. Under a proper construction of the pledge exacted here, a pledge was made to support the nominees of the primary then held. Only two voters took any exception to the form of the pledge. Each of these was accorded the right to vote. There is no evidence herein that anyone refrained from voting on account of the pledge, and each voter in substance pledged himself to vote for the nominees of the primary. Whether the variation in the pledge arose from accident or design does not appear. Nothing in this record tends in any way to indicate that the election was other than the free and fair expression of the will of the electors participating.

■ In case of a mandatory requirement, such as this is, when the question is, if in fact same has been complied with, acts will be liberally construed, and therefore substantial compliance is all that is necessary to give effect to ballots cast in good faith. Turner v. Teller, Tex.Civ.

App., 275 S.W. 115; McCharen v. Mean, Tex.Civ.App., 275 S.W. 117.

Each of the above cited cases has been many times cited by the courts of this State with approval. In the case first cited, Judge Smith, in speaking of the requirement that the presiding judge should write his signature on the blank side of the ballot, says [275 S.W. 116]: "It is the duty of these courts, of course, to strictly enforce these provisions in every case to the point of rendering it certain that the purpose in view has been accomplished; but beyond that point those provisions should be liberally construed for the higher purpose of ascertaining and giving effect to the will of the electorate when expressed in good faith and in substantial compliance with the mandatory legislative requirements. In other words, the statutory enactments will be strictly enforced to prevent fraud, but liberally construed in order to ascertain and effectuate the will of the voters." This because the purposes and objects of the statute are met.

■ The purpose of the test required by Article 3110 is to guarantee by the certification of the voter that he is qualified to vote in the primary. Love v. Buckner, 121 Tex. 369, 49 S.W.2d 425. Said in another way, the object of the test is simply to determine the voter's qualifications to have a part in choosing the candidates of the party and in dictating its policies. Westerman v. Mims, supra.

■ Granted, the test printed was broader than the test required by law, if same comprehended the required test, there was a substantial compliance with the law, and the object and purpose of the test fulfilled. There is not an intimation in the agreed facts that the results of the election were in any way influenced by the fact that the test as printed on the ballot, although not in the exact words of the statute, in any way influenced the result. To overthrow that result on the ground urged by contestant would be harsh and formalistic. Perales would be deprived of a right fairly won in a contest fairly held; deprived of this right through no fault of his, but on account of something he could not have prevented—on account of something that the electors participating had no practical way of preventing nor correcting.

The test of the ballot should have followed the words of the statute, but there

640

is no showing that anyone voted that was not legally entitled to vote; there is no showing that anyone legally entitled to vote was denied the right of voting. The test on the ballot substantially conformed to the test required by law. Under the test printed one voting certainly pledged himself to support the nominees of that primary. Such nominees could not be other than the nominees of the Democratic Party. It is true, any voter had the right at a proper time prior to the time he voted to require the election officials to furnish him a ballot, and provide the necessary ballots for the primary with the literal statutory pledge thereon. The most that may be said is the broadened scope of the pledge printed on the ballot is mere surplusage and without binding effect on the voter, or that the added obligation was voluntarily assumed by the voters and no complaint thereof may be properly made by the candidate.

The judgment of the trial court is affirmed.

On account of the short time remaining for the preparation of the official ballot, the filing of a motion for rehearing herein is denied.