82 So.2d 264

**STATE ex rel. Grey CLEVELAND**

v.

**G. H. STACY, Probate Judge, et al.**

**2 Div. 349.**

Supreme Court of Alabama.

Aug. 18, 1955.

Nelson O. Fuller, Centreville, and Le-Maistre, Clement & Gewin, Tuscaloosa, for appellant.

deGraffenried, deGraffenried & deGraffenried, Tuscaloosa, for appellees.

SIMPSON, Justice.

Appellant, Grey Cleveland, filed a petition for writ of mandamus in the circuit court of Bibb County against the appellees as members of the Board of Supervisors of Bibb County, Alabama. This appeal is from a ruling of that court granting appellees' motion to quash the alternative writ of mandamus previously issued. The petition for mandamus sought to require appellees to show cause why they should not certify the appellant, Grey Cleveland, as the duly elected tax collector of said county in the last general election.

In the May primary Vance Cleveland was nominated and declared the nominee of the Democratic party for the office of tax collector. Ballots were prepared with the name of Vance Cleveland only imprinted in the space allotted for candidates for that office in the Democratic column. Subsequently, on October 9, 1954 (twenty-three days prior to the election on November 2, 1954, and after the time prescribed by law for printing the official ballots), Vance Cleveland died. According to the pleadings, the death and funeral of Vance Cleveland were publicized and voters throughout the county had general knowledge of his death prior to the general election. Nevertheless, on November 2 some 1,590 qualified voters cast their ballots in favor of Vance Cleveland, while forty-nine voters exercised their privilege of writing in the name of a candidate and cast their ballots for Grey Cleveland, wife of Vance Cleveland. Appellees, as the Board of Supervisors of said county, met on November 15, 1954, and canvassed the votes cast in the election; no certificate of election was issued as to the office of tax collector. This action is to compel certification of Grey Cleveland as duly elected tax collector.

This appeal brings up for decision the question of what is the legal effect of the 1,590 votes cast for Vance Cleveland, deceased. Are they to be counted in the determination of which candidate received the highest number of votes? Or, are they to be considered as null and void votes, thrown away, and not to be counted in determination of the results of the election as regards Grey Cleveland? The result of the first alternative is to leave vacant the office for future filling by declaring the election to be no valid election for that office; choice of the second alternative is to cause mandamus to issue to the Board of Supervisors to compel certification of Grey Cleveland as tax collector.

It is a fundamental principle of popular government that the legally expressed will of the majority must prevail in elections. 29 C.J.S., Elections, § 241, p. 351. Electorate will is computed in tabulation of legal votes. Where there is a contested election in Alabama, the statute provides that if the person who received the highest number of legal votes be ineligible or disqualified, the election must be declared void. Code 1940, Title 17, § 250. Reasoning by analogy, it should follow that where there is not a contested election, but there does arise the same question of what votes to count, this statutory policy should be given effect. Sound public policy dictates that public elective offices be filled by those who have received the highest number of votes cast in the election for that office. Huey v. Etheridge, 234 Ala. 264, 175 So. 268; States ex rel. Staes v. Gastinel, 18 La.Ann. 517; Sublett v. Bedwell, 47 Miss. 266, 12 Am.Rep. 338. In construing a similar statute where it was necessary to determine the effect of votes for a deceased candidate, the St. Louis Court of Appeals (Missouri) found that where a candidate other than the deceased did not receive a majority or plurality:

"* * * The will of the electors was declared against him. He is not 'the person having the highest number of votes,' to whom the certificate must, under the statute, be given; for these words imply that the *successful candidate shall be the choice of the majority of voters who vote.*" (Emphasis supplied). State ex rel. Herget v. Walsh, 7 Mo.App. 142.

In cases involving deceased candidates, the general rule, as stated at 133 A.L.R. 320, is that votes cast for a deceased, disqualified, or ineligible person, although ineffective to elect such person to office, are not to be treated as void or thrown away, but are to be counted in determining the result of the election as regards the other candidates. Cases supporting the annotation do not appear to distinguish between death, disqualification, and ineligibility. The theory behind the rule is based on the premises (a) that majority rule must prevail in elections, and (b) that death is merely a disqualification for filling public office. Saunders v. Haynes, 13 Cal. 145; Patten v. Haselton, 164 Iowa 645, 146 N.W. 477, 51 L.R.A.,N.S., 226; Wood v. Bartling, 16 Kan. 109. Common sense supports the latter premise as strongly as public policy supports the former. Certainly it cannot be denied that if the test for qualification be fitness for holding office, death is a paramount disqualification.

Objection is taken on the ground that one who knowingly casts his vote for a deceased candidate intentionally throws away his ballot. But this need not be true; the elector may will that this election be declared a nugatory election with the result that the office be left vacant temporarily, and to be filled later by appointment or through a special election. Shroyer v. Thomas, 368 Pa. 70, 81 A.2d 435; In re Primary Election Held in Lackawanna County, May 1942, Appeal by McLane, 345 Pa. 228, 27 A.2d 189; Derringe v. Donovan, 308 Pa. 469, 162 A. 439, 441. As pointed out in State ex rel. Herget v. Walsh, supra:

" * * * the majority of voters, so far from desiring or intending to throw their votes away, wish to use them to their utmost effect; and it is only by a fiction, raised if at all by the law, that the majority in such case throw their votes away."

The effect of not counting votes cast for a deceased candidate is summoned up by Mr. Justice Maxey in Derringe v. Donovan, supra:

"To hold that the votes cast for a contemporaneously or recently deceased winning candidate for Governor or United States Senator or Congressman or school director shall be regarded as nullities, and that his opponent who was voted for by only a minority of the voters is in fact elected, because he receives the highest vote among the candidates who are alive at the time of the closing of the polls, is repugnant to the principle of majority rule, which is the cornerstone of orderly government."

To uphold the view that to permit a minority group to place in office a candidate otherwise totally unacceptable to the majority merely through mischance (death of a popular candidate) impresses us as a usurpation of the majority will through no fault or neglect of the voters. As was said in the early California case of Saunders v. Haynes, supra:

"An election is the deliberate choice of a majority or plurality of the electoral body. This is evidenced by the votes of the electors. But, if a majority of those voting, by mistake of law or fact, happen to cast their votes upon an ineligible candidate, it by no means follows that the next to him on the poll should receive the office. If this be so, a candidate might be elected who received only a small portion of the votes, and who never could have been elected at all but for this mistake. The votes are not less legal votes because given to a person in whose behalf they cannot be counted; and the person who is the next to him on the list of candidates does not receive a plurality of votes because his competitor was ineligible. The votes cast for the latter, it is true, cannot be counted for him; but that is no reason why they should, in effect, be counted for the former, who, possibly, could never have received them. It is fairer, more just, and more consistent with the theory of our institutions, to hold the votes so cast as merely ineffectual for the pur-

188

pose of an election, than to give them the effect of disappointing the popular will, and electing to office a man whose pretensions the people had designed to reject." 133 A.L.R. 323.

In the case before us, where it affirmatively appears that the appellant received only forty-nine of the total number of votes, but the deceased candidate received the other 1,590 ballots cast for this office, we think the better rule is that the election for this office be held null and void because of the disqualification (by death) of the winning candidate.

Affirmed.

LAWSON, STAKELY, GOODWYN and MERRILL, JJ., concur.