ROBERT J. INGERSOLL, Petitioner, *v.* GERALDINE LAMB as Clerk of the Commissioners of Ormsby County, Nevada, DONALD ARMSTRONG, EVERT GORDON, and WILLIAM GONI as Commissioners of Ormsby County, Nevada, Respondents.

No. 4171

January 5, 1959                                   333 P.2d 982

*Vargas, Dillon & Bartlett,* and *Alex A. Garroway,* all of Reno, for Petitioner.

*Cameron M. Batjer,* District Attorney, Ormsby County, for Respondents.

**OPINION**

By the Court, BADT, J.:

This is an original petition for a writ of mandate (after denial by the First Judicial District Court, Richard R. Hanna, judge, of an identical petition) directing the issuance to petitioner by respondents of a certificate of election as assessor of Ormsby County.

Petitioner and Lester V. Smith were candidates for such office at the general election held November 4, 1958. Smith died October 21, 1958 while he was serving as sheriff and ex-officio assessor. His death received wide publicity and most, if not all, electors voting at said general election had knowledge of his death. Smith received 1,489 votes and petitioner 1,161.

No constitutional or statutory provision explicitly governs the situation, nor does any prior decision of this court direct the solution. The decisions of the courts of other jurisdictions are diametrically opposed, each asserting its views in positive and uncompromising language. Under such guidance as is afforded by our constitution and laws and our theories of popular government, and under authority of those cases which we think follow the better and more logical rule (as well, it would seem, as the majority rule), we have concluded that petitioner,

not having received the highest number of votes cast, is not entitled to receive a certificate of election.

With reference to federal, state and district offices, section 4 of article V of the constitution provides: "The persons having the highest number of votes for the respective offices shall be declared elected." NRS 296.380 reads: "The board of county commissioners shall cause a certificate of election to be made out by the clerk of the board of county commissioners to each of the persons having the highest number of votes for members of the legislature, district, county and township offices, respectively, and the clerk shall deliver such certificate to the person entitled to it upon his making application to the clerk at his office." As to both of the provisions quoted, petitioner points out that Smith was not a "person" but was a "deceased person," that the board of county commissioners could not logically cause a certificate of election to be made out to a deceased person, that a deceased person could not make application for such certificate. This however but leads us to the main question. Though the votes cast for Smith were ineffective to elect him to office, must they be treated as void, thrown away, not to be counted in determining the result with regard to petitioner, the opposing candidate? Cases cited by petitioner do indeed so hold "that a voter at the polls, unless he votes for some person, is not voting at all," that such ballot "is a nullity, cannot be counted and cannot be given any effect in determining the result of the election." (State ex rel. Wolff v. Geurkind, 111 Mont. 417, 109 P.2d 1094, 1099, 133 A.L.R. 304[1]) ; that "It is equivalent to throwing away a vote knowingly to cast it for one who has passed from earth to the great beyond * * * of no more effect than to deposit a blank ballot," that this "is axiomatic * * * not open to debate * * * obvious to everybody." (Madden v. Board of Election Commissioners, 251 Mass. 95, 146 N.E. 280, 281[2]) ; that votes for a dead man "are thrown away; and those who

[1]But much of the opinion seems to be governed by the fact that the voter could under the statute have written in the name of a candidate.

[2]But here again "write-in votes" and "stickers" were permitted.

cast them are to be held as intending to throw them away." (People ex rel. Furman v. Clute, 50 N. Y. 451, 10 Am.Rep. 508.)

Similar language is used in other authorities cited by petitioner. Some are affected by particular statutes, some by distinguishing death from other disqualification or ineligibility, some by knowledge or lack of knowledge of the candidate's death. Space does not permit a discussion of these distinctions, some of which appear to be rather finely drawn.[3] We turn rather to those authorities whose views we share. In a comprehensive annotation in 133 A.L.R. 319, 321, we read: "The general rule—that votes cast for a deceased, disqualified, or ineligible person are not to be treated as void or thrown away, but are to be counted in determining the result of the election as regards the other candidates—has been most frequently applied in cases where the highest number of votes were cast for the deceased or disqualified person. The result of its application in such cases is to render the election nugatory, and to prevent the election of the person receiving the next highest number of votes. The rule has been applied, or recognized as applicable, under such circumstances, in the following cases:" This is followed by citations to cases from 28 states, Puerto Rico, England, Australia and Canada. We find no better reason for the general rule than that stated by the Supreme Court of California in 1859, in Saunders v. Haynes, 13 Cal. 145, extensively cited, and referred to in 7 Calif. Law Review 64 as stating that the rule is "well established." "An election is the deliberate choice of a majority or plurality of the electoral body. This is evidenced by the votes of the electors. But if a majority of those voting, by mistake of law or fact, happen to cast their votes upon an ineligible candidate, it by no means follows that the next to him on the poll should receive the office. If this be so, a candidate might be elected who received

---

[3]In wiping out the attempted distinction between death, disqualification and ineligibility, the court in State ex rel. Cleveland v. Stacy, 263 Ala. 185, 82 So.2d 264, 265, tersely says: "* * * death is a paramount disqualification."

only a small portion of the votes and who never could have been elected at all but for this mistake. The votes are not less legal votes because given to a person in whose behalf they cannot be counted; and the person who is the next to him on the list of candidates does not receive a plurality of votes because his competitor was ineligible. The votes cast for the latter, it is true, cannot be counted for him; but that is no reason why they should, in effect, be counted for the former, who, possibly, could never have received them. It is fairer, more just, and more consistent with the theory of our institutions, to hold the votes so cast as merely ineffectual for the purpose of an election, than to give them the effect of disappointing the popular will, and electing to office a man whose pretensions the people had designed to reject."

The same kind of reasoning was used in State ex rel. Herget v. Walsh, 7 Mo.App. 142, where the court asked: "If the voter can make his vote effective only by voting in a certain way, and if the result of his voting in this way is to secure a new election at which the majority can elect, how can it be assumed that the voter intended to throw away his vote?" The court later adds, "* * * and it is only by a fiction, raised, if at all, by the law, that the majority in such cases throw their votes away." A like philosophy is expounded in Derringe v. Donovan, 308 Pa. 469, 162 A. 439, 441, which logically shows that a contrary rule would be "repugnant to the principle of majority rule, which is the cornerstone of orderly government." Contrary to the rule stated in Dunagan v. Jones, Tex.Civ.App. (1935), 76 S.W.2d 219, 222, that where a vote is cast for a candidate known to be dead the effect is "a deliberate intent to waste it" and a "wanton" misapplication of it, it was said in Sanders v. Rice, 41 R.I. 127, 102 A. 914, L.R.A. 1918C, 1153, that votes so cast were not in such willful defiance of law as to be thrown away but could be counted in support of a showing that the opposing candidate had not received a majority. This, in short, is the application of what has come to be known as "the American rule," which we adopt as

opposed to what is known as "the English rule," Anno. 133 A.L.R. 319, 340, followed by a number of the American courts.

Petition denied.

MERRILL, C. J., and MCNAMEE, J., concur.