Appellant Ralph R. Banks, Jr., appeals from the judgment of the Probate Court of Greene County, Alabama, declaring the office of district judge of Greene County vacant, pursuant to an election contest filed by appellee John Zippert. We affirm.
Richard Osborne and Ralph R. Banks, Jr.,[1] were candidates for the office of district judge of Greene County in the Democratic primary election held September 7, 1982. Osborne was the victor and was certified as the party's nominee. No other party nominated candidates for that office.
On October 12, 1982, Banks learned that Osborne had been convicted of larceny in the municipal court of Montgomery in 1969, when Osborne was twenty-one years old. *Page 1148 
When he registered to vote in 1981, Osborne disclosed that he had been convicted of larceny and fined. On October 14, 1982, Banks notified the State Democratic Executive Committee that Osborne was disqualified from being a candidate for public office because of the previous larceny conviction and requested that he be made the party's nominee.
The Committee set a hearing on the matter, but on October 27, 1982, decided not to pursue it.
On October 28, 1982, Banks's son, Ralph Banks III, filed suit in Greene County Circuit Court in his capacity as a qualified voter, taxpayer, and resident citizen of Greene County, seeking a preliminary injunction and declaratory relief. The hearing on the preliminary injunction was set for November 1, 1982, but when that day came and service had not been obtained on Osborne, an application for a temporary restraining order was filed in open court. The court, without addressing the issue of Osborne's qualification, granted a temporary restraining order, restraining the defendant members of the Board of Supervisors for Greene County for the November 2, 1982, general election and members of the Board of Registrars for Greene County from posting, publishing, or certifying election results for the office of district judge, pending a hearing on the merits. The next day, November 2, 1982, Osborne received 2,672 votes in the general election. Banks, though not on the ballot, received 626 write-in votes.
Service was obtained on Osborne on November 5, 1982. In his answer, Osborne denied that he was ineligible to hold the office and alleged that the complaint should be dismissed. He admitted, however, that he had stolen automobile hub caps in the City of Montgomery and had been convicted of larceny. On November 19, 1982, following a hearing on the merits, the trial court ruled Osborne "ineligible to and disqualified from holding the office of District Judge" because of the larceny conviction. The trial court further permanently enjoined Osborne's certification as the newly-elected district judge.[2]
The 626 write-in votes received by Banks in the general election were later certified to the Secretary of State by the Greene County Board of Supervisors, and on December 20, 1982, Banks was officially declared the elected district judge of Greene County. On December 28, 1982, John Zippert, in his capacity as a qualified voter in the general election, filed a statement of contest with the Probate Court of Greene County, pursuant to § 17-15-27, Ala. Code 1975, seeking to void the November 2, 1982, general election, contending, first, that the Board of Supervisors for Greene County had certified only those votes cast for Banks and failed to certify those votes cast for Osborne, and, second, that the votes cast for Osborne were legal votes, were illegally rejected, and, had they not been so rejected, would have increased the number of legal votes for Osborne above those received by Banks.
The probate court initially set the contest for trial on February 8, 1983. The case was subsequently continued by agreement, and trial commenced on February 15, 1983. The trial was continued from time to time thereafter until the date of the final hearing on June 1, 1984, when the probate court ruled that the 2,672 votes cast for Osborne in the November 2, 1982, general election, while ineffective to elect him to the office, were legal votes, were illegally rejected, and should have been counted and considered in determining the result of the election. It then rendered judgment voiding that election because of the disqualification of Osborne, who had received the majority of the legal votes cast therein, and certified to the Governor that the office was vacant. Banks appeals.
Banks contends that the probate court was without authority under § 17-15-32, Ala. Code 1975, to declare the November 2, 1982, general election void and certify to *Page 1149 
the Governor that the office of district judge was vacant. We disagree.
Section 17-15-32, supra, reads as follows:
 "If, on the trial of the contest of any election, either before the judge of probate or the circuit court, it shall appear that any person other than the one whose election is contested, received or would have received, had the ballots intended for him and illegally rejected been received, the highest number of legal votes, judgment must be given declaring such person duly elected, and such judgment shall have the force and effect of investing the person thereby declared elected, with full right and title to have and to hold the office to which he is declared elected. If it appears that two or more persons have, or would have had, if the ballots intended for them and illegally rejected had been received, the highest and equal number of votes for such office, judgment must be entered declaring the fact, and such fact must be certified to the officer having authority to fill vacancies in the office the election to which was contested. If the person whose election is contested is found to be ineligible to the office, judgment must be entered declaring the election void and the fact certified to the appointing power. If the party Whose election is contested is found to have been duly and legally elected, judgment must be entered declaring him entitled to have and to hold the office to which he was so elected." (Emphasis added.)
State v. Stacy, 263 Ala. 185, 82 So.2d 264 (1955), controls here. There, the Court, construing § 250, Tit. 17, Code 1940 (the predecessor of § 17-15-32, supra), stated:
 "It is a fundamental principle of popular government that the legally expressed will of the majority must prevail in elections. 29 C.J.S., Elections, § 241, p. 351. Electorate will is computed in tabulation of legal votes. Where there is a contested election in Alabama, the statute provides that if the person who received the highest number of legal votes be ineligible or disqualified, the election must be declared void. . . . Reasoning by analogy, it should follow that where there is not a contested election, but there does arise the same question of what votes to count, this statutory policy should be given effect. Sound public policy dictates that public elective offices be filled by those who have received the highest number of votes cast in the election for that office. [Citations omitted.] In construing a similar statute where it was necessary to determine the effect of votes for a deceased candidate, the St. Louis Court of Appeals (Missouri) found that where a candidate other than the deceased did not receive a majority or plurality:
 "`* * * The will of the electors was declared against him. He is not "the person having the highest number of votes," to whom the certificate must, under the statute, be given; for these words imply that the successful candidate shall be the choice of the majority of voters who vote.'
(Emphasis supplied). State ex rel. Herget v. Walsh, 7 Mo.App. 142.
 "In cases involving deceased candidates, the general rule, as stated at 133 A.L.R. 320, is that votes cast for a deceased, disqualified, or ineligible person, although ineffective to elect such person to office, are not to be treated as void or thrown away, but are to be counted in determining the result of the election as regards the other candidates. Cases supporting the annotation do not appear to distinguish between death, disqualification, and ineligibility. The theory behind the rule is based on the premises (a) that majority rule must prevail in elections, and (b) that death is merely a disqualification for filling public office. [Citations omitted.] Common sense supports the latter premise as strongly as public policy supports the former. Certainly it cannot be denied that if the test for qualification be fitness for holding office, death is a paramount disqualification.
". . . . *Page 1150 
 "The effect of not counting votes cast for a deceased candidate is summoned up by Mr. Justice Maxey in Derringe v. Donovan [308 Pa. 469, 162 A. 439]:
 "`To hold that the votes cast for a contemporaneously or recently deceased winning candidate for Governor or United States Senator or Congressman or school director shall be regarded as nullities, and that his opponent who was voted for by only a minority of the voters is in fact elected, because he receives the highest vote among the candidates who are alive at the time of the closing of the polls, is repugnant to the principle of majority rule, which is the cornerstone of orderly government.'
 "To uphold the view that to permit a minority group to place in office a candidate otherwise totally unacceptable to the majority merely through mischance (death of a popular candidate) impresses us as a usurpation of the majority will through no fault or neglect of the voters. As was said in the early California case of Saunders v. Haynes [13 Cal. 145]:
 "`An election is the deliberate choice of a majority or plurality of the electoral body. This is evidenced by the votes of the electors. But, if a majority of those voting, by mistake of law or fact, happen to cast their votes upon an ineligible candidate, it by no means follows that the next to him on the poll should receive the office. If this be so, a candidate might be elected who received only a small portion of the votes, and who never could have been elected at all but for this mistake. The votes are not less legal votes because given to a person in whose behalf they cannot be counted; and the person who is the next to him on the list of candidates does not receive a plurality of votes because his competitor was ineligible. The votes cast for the latter, it is true, cannot be counted for him; but that is no reason why they should, in effect, be counted for the former, who, possibly, could never have received them. It is fairer, more just, and more consistent with the theory of our institutions, to hold the votes so cast as merely ineffectual for the purpose of an election, than to give them the effect of disappointing the popular will, and electing to office a man whose pretensions the people had designed to reject.' 133 A.L.R. 323." (Emphasis added.)
263 Ala. at 186-87, 82 So.2d at 265-66.
Osborne's disqualification in the November 2, 1982, general election required that that election be declared void as a matter of law. Pursuant to § 17-15-32, supra, the probate court declared the general election void and certified that fact to the appointing authority. The probate court was, therefore, acting within its statutory authority.
Banks also contends that the judgment of the probate court is void for lack of jurisdiction because the case was not set for trial and tried to completion within the period prescribed by statute. Again, we disagree. Section 17-15-27, Ala. Code 1975, in pertinent part, states as follows:
 "On the filing of the statement and the giving of the security, the judge of probate must indorse thereon an order appointing a day for the trial of the contest, not less than 30 nor more than 50 days from the day of the reception of the certified statement. . . ."
The statement of contest was filed by Zippert in the probate court on December 28, 1982, and a trial date was set for February 8, 1983, forty-two days from the filing of the statement and within the statutory period. We note that the case was continued by agreement and trial commenced on February 15, 1983, forty-nine days from the filing of the statement and still within the period prescribed by the statute. The probate court was not divested of jurisdiction by its discretionary continuation of the case beyond the statutory period.
Other errors argued by the appellant are without merit. Therefore, the judgment of *Page 1151 
the probate court is due to be, and it is hereby, affirmed.
AFFIRMED.
MADDOX, FAULKNER, JONES, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
[1] Ralph R. Banks, Jr., was the incumbent Greene County district judge.
[2] Osborne appealed, and the judgment of the trial court was later affirmed by this Court on September 30, 1983. Osborne v.Banks, 439 So.2d 695 (Ala. 1983).