Honorable Ralph Munro Secretary of State P.O. Box 40220 Olympia, WA 98504-0220
Dear Secretary Munro:
By letter previously acknowledged, you have requested our opinion on the following three questions:
 1. If a candidate for partisan office dies prior to a primary or general election and the candidate's party does not appoint a successor, pursuant to RCW 29.18.160, should the name of the deceased candidate appear on the ballot? Would the answer be different if the election at issue is a primary in which more than one candidate of the deceased individual's party has filed a declaration of candidacy? Is AGO 49-51 No. 328, which advised that the name of the deceased candidate could be removed from the ballot, still good advice?
 2. Would the answer to Question 1 be different if the office involved were a judicial or other nonpartisan office?
 3. If the name of a deceased candidate appears on the ballot, should votes cast for that candidate be treated as legal votes for purposes of determining the outcome of the election? If the question is answered in the negative, and if the deceased candidate received the greatest number of votes, should the candidate who receives the next greatest number be certified as the winner?
 BRIEF ANSWERS
We adopt the reasoning of the majority of American courts ruling on the subject, which is that votes cast for a deceased candidate should nonetheless "count" as valid for determining the outcome of the election. From this conclusion, it follows that the name of a deceased candidate should not be removed from the ballot unless the name of another candidate has been properly substituted pursuant to statute. The rule should apply to any office (partisan or nonpartisan), including judicial offices. If a deceased candidate receives the greatest number of votes for an office, the result is to create a vacancy in the office, to be filled in whatever manner the law prescribes for filling vacancies in that office. To the extent it is inconsistent with this opinion, AGO 49-51 No. 328 is overruled.
 ANALYSIS
1. If a candidate for partisan office dies prior to a primary orgeneral election and the candidate's party does not appoint asuccessor pursuant to RCW 29.18.160, should the name of thedeceased candidate appear on the ballot? Would the answer bedifferent if the election at issue is a primary in which more thanone candidate of the deceased individual's party has filed adeclaration of candidacy? Is AGO 49-51 No. 328, which advisedthat the name of the deceased candidate could be removed from theballot, still good advice?
Although hundreds of state and local officers are elected each year in Washington, and candidates die from time to time when elections are pending, neither the legislature, by statute, nor our state courts, by opinion, have fixed a rule as to how the death of a candidate affects the results of the election.[1] The sole statute relating to the subject is the one you cite, RCW 29.18.160, which provides in part:
 A vacancy caused by the death or disqualification of any candidate or nominee of a major or minor political party may be filled at any time up to and including the day prior to the election for that position. For state partisan offices in any political subdivision voted on solely by electors of a single county, an individual shall be appointed to fill such vacancy by the county central committee in the case of a major political party or by the state central committee or comparable governing body in the case of a minor political party. For other partisan offices, including federal or state-wide offices, an individual shall be appointed to fill such vacancy by the state central committee or comparable governing body of the appropriate political party.[2]
Id. Your question concerns what procedure to follow if the appropriate party committee fails to appoint someone to fill a vacancy. This could occur if (1) the death or disqualification occurs too late for the appropriate party committee to meet and make a decision by the day before the election, (2) the party committee fails to act, or (3) the deceased person was an independent candidate not associated with any political party. See RCW 29.24.
This brings us to a discussion of AGO 49-51 No. 328, in which we advised the secretary of state that a county auditor is authorized to remove from the ballot the name of a candidate for the office of sheriff who had died after filing for the office but before the primary election ballots were printed. The opinion appears to be based on an assumption contained in the question presented. The question was: "Is the county auditor, as county supervisor of elections, authorized to correct the ballots by causing the name of the deceased candidate to be removed therefrom?" AGO 49-51 No. 328 at 1 (italics ours). The question assumed, as did the answer, that ballots cast for a deceased candidate would be nullities. It logically followed that, to avoid confusion or deception, the printed ballots should be "corrected" to remove names of persons who were not in fact qualified to receive votes. Otherwise, the opinion reasoned, voters seeing the name of the deceased candidate might be misled into wasting their votes.
As the weight of opinion from other jurisdictions concludes, however, it is not warranted to assume that votes cast for a dead or disqualified candidate are nullities.[3] Perhaps the best-reasoned recent case is Evans v. State Election Board,804 P.2d 1125 (Oklahoma 1990). In Evans, the Oklahoma Supreme Court surveyed the case law and noted that some states follow a minority, or "English" rule, while most follow an "American" rule. The English rule (reflected in the assumptions behind AGO 49-51 No. 328) is that (1) a dead candidate is ineligible to serve; therefore (2) a vote for a deceased candidate is a nullity, a wasted vote; therefore (3) votes for deceased or disqualified candidates must be ignored in determining the results of elections; and therefore (4) it is appropriate to remove from the ballot the names of deceased or disqualified candidates. By contrast, the American rule holds that (1) the purpose of an election is to carry out the will of the people; (2) votes for a deceased or disqualified candidate represent a choice by qualified voters[4] among the options presented on the ballot; (3) to disregard such votes, especially when they constitute a majority or plurality of the voters, is to frustrate the popular will; so therefore (4) votes for deceased and disqualified candidates should be counted like any other votes, and if the "candidate" in question would have won the election, the result is a vacancy in the office. See generally Evans, 804 P.2d at 1129-1130; see also Banks v. Zippert, 470 So.2d 1147 (Ala. 1985); State ex rel. Jackson v. County Court, 166 S.E.2d 554 (W.Va. 1969); Tellez v. Superior Court, 450 P.2d 106 (Ariz. 1969); Ingersoll v. Lamb,333 P.2d 982 (Nev. 1959). There is also an extensive discussion of the subject in P.V. Smith, Annotation, Result of Election as Affected By Votes Cast for Deceased or Disqualified Person, 133 A.L.R. 319 (1941).
As the cases demonstrate, the rationale for the "American" rule is the desire to recognize political realities and to carry into effect the public will. A very early case stated the principle as follows:
 An election is the deliberate choice of a majority or plurality of the electoral body. This is evidenced by the votes of the electors. But if a majority of those voting, by mistake of law or fact, happen to cast their votes upon an ineligible candidate, it by no means follows that the next to him on the poll should receive the office. If this be so, a candidate might be elected who received only a small portion of the votes and who never could have been elected at all but for this mistake. . . . It is fairer, more just, and more consistent with the theory of our institutions, to hold the votes so cast as merely ineffectual for the purpose of an election, than to give them the effect of disappointing the popular will, and electing to office a man whose pretensions the people had designed to reject.
Saunders v. Haynes, 13 Cal. 145, 153-55 (1859).
As this old case observes, an election is a choice among two or more known candidates in which the voters decide both which candidate they prefer and which candidates they do not prefer. Candidates decide whether to seek an office and voters decide how to vote based on an assessment of the range of candidates on the ballot. If one of the candidates dies, the choice available to the voters is suddenly altered. RCW 29.18.160 relieves the situation somewhat by permitting the deceased candidate's political party to substitute another candidate. Where this is not possible, though (or does not occur for some reason), leaving the deceased candidate's name on the ballot allows the voters a choice they otherwise would not have. Some voters might prefer "someone else" over the remaining names on the ballot and would prefer to cast their votes for a vacancy. Counting the votes for the deceased candidate honors this choice and helps assure that the people will be governed by those who represent the popular will. Other solutions reduce the choice available to the voters and reduce the chance that the election results will actually reflect the public will.[5]
Accordingly, for the reasons stated above, and in the cases cited, we think our courts would likely adopt the "American" rule recognizing the validity of votes cast for dead or disqualified candidates. To the extent the reasoning of AGO 49-51 No. 328 is to the contrary, we reverse ourselves and overrule its reasoning.
We would also apply this principle to the situation occurring where one candidate in a multi-candidate partisan primary dies before the election, because the same policy considerations are present.[6] If the deceased candidate happens to gain the most votes among candidates of that party, another candidate can be substituted in the general election. If another candidate defeats the deceased candidate, the system has suffered no harm.
2. Would the answer to Question 1 be different if the officeinvolved were a judicial or other nonpartisan office?
Most of the cases under discussion above involved judicial and other nonpartisan offices. We think the principles of the "American" rule should apply to these offices as well. Indeed, the rule may be more important here because RCW 29.18.160 does not apply to nonpartisan offices, and there is no mechanism for substituting a candidate for a nonpartisan office. Thus, if a candidate for nonpartisan office dies before the election, there is no way (except the write-in) to restore to the voters the choice lost if votes for the deceased candidate must be excluded. Therefore, we adopt the same reasoning for these offices as for partisan positions.[7]
We add a comment concerning the application of the "American" rule to judicial elections, given some peculiarities of Washington electoral law. By virtue of article IV, section 29 of the Washington Constitution (adopted as Amendment 41 in 1966), certain special rules apply to superior court elections. In any county with a population of 100,000 or more, if there are any superior court positions for which only one candidate files, no primary or general election is held for those positions, and the person filing receives a certificate of election. The implications of your question, and our answer, are that where two or more candidates in such a county file for a position, and all candidates but one die or become disqualified before the primary election, the remaining candidate is not entitled to a certificate of election. Instead, a primary election is conducted in which voters may support either the "surviving" candidate or one of those who died or became disqualified. The result depends on who gets the most votes and whether any candidate receives a majority.
This in turn implicates RCW 29.30.085(2), which provides that if, in a contested primary for certain judicial offices or for the office of state superintendent of public instruction, one candidate gains a majority of all the votes cast, only the name of that candidate is printed on the general election ballot.[8]
Applying the "American" rule means that, even if one or more candidates dies or becomes disqualified before the election, the votes cast for these candidates must be included for purposes of determining whether any candidate has gained a majority of all of the votes. We will not here attempt to lay out all the possible results of such an election or their consequences for the general election ballot.[9]
3. If the name of a deceased candidate appears on the ballot,should votes cast for that candidate be treated as legal votes forpurposes of determining the outcome of the election? If thequestion is answered in the negative, and if the deceasedcandidate received the greatest number of votes, should thecandidate who receives the next greatest number be certified asthe winner?
We have already answered this question in the discussion above. In our opinion, votes cast for a deceased candidate should be treated as legal votes. If the deceased candidate received the greatest number of votes, the result is a vacancy in the position, to be filled however the law provides for filling the position in question. Given the reasoning stated above and the case law cited, it would not be appropriate, in any such case, to declare as the winner a person who did not in fact receive the greatest number of votes.[10] State ex rel. Quick-Ruben v. Veharen supports our conclusion that the death or disqualification of the winning candidate in an election should not result in a victory for a candidate who clearly lost the race.
We trust the foregoing will be of assistance.
Sincerely,
CHRISTINE O. GREGOIRE Attorney General
JAMES K. PHARRIS Senior Assistant Attorney General
[1] We understand that the inspiration for your question is a situation occurring in 1998, in which the only two candidates filing for a county coroner position both died before the election was held. This opinion is not intended as a comment on the procedure followed in that county, but as guidance for future elections.
[2] The remainder of the statute provides that if the vacancy occurs no later than the third Tuesday prior to the election, the name of the appointee will be substituted on the ballot for the name of the deceased candidate. If the election occurs later than that date, the statute directs that votes cast for the deceased or disqualified candidate be counted for the person named to fill the vacancy. RCW 29.18.160.
[3] Although Washington courts have never decided this issue, at least two decisions implicitly have rejected the notion that votes cast for a deceased or disqualified candidate should be disregarded. In State ex rel. Ewing v. Reeves, 15 Wn.2d 75,129 P.2d 805 (1942), four candidates had filed for a position on the state supreme court in the 1942 election. The incumbent, John F. Main, received a plurality (though not a majority) of the votes cast in the primary election. Accordingly, the secretary of state certified the two candidates with the highest votes (Main and Mallery) to appear on the general election ballot. Subsequently, Main fell ill and, by writing, withdrew from candidacy for re-election. Ewing, who had placed third in the primary voting, sought to be placed on the ballot as the second candidate in the general election. The supreme court (Justice Main not participating) unanimously held that the votes cast for Main "counted" so as to qualify Main and Mallery, but no other candidate, as candidates in the general election. Four of the justices took the position that Main's name should remain on the ballot, asserting that there was no law permitting a judicial candidate to withdraw. The other four thought Mallery's name should appear on the November ballot alone. Much more recently, in State ex rel. Quick-Ruben v. Verharen, 136 Wn.2d 888, 969 P.2d 64
(1998), the candidate defeated by an incumbent superior court judge in a two-person judicial primary subsequently sought to have himself declared elected on the theory that the incumbent was a disqualified non-resident at the time of his renomination. Although the court declined to reach the underlying merits of the claim of non-residency, the court unanimously held that votes cast, even if for a disqualified candidate, "count" for the purposes of defeating other candidates. These decisions suggest that the court regards votes cast for disqualified candidates to be "legal" votes. Even if such votes are ineffective for electing a candidate, they can clearly establish the voter's rejection of another candidate. It therefore follows that removal of the names of deceased candidates from the ballot would frustrate the voters' opportunity to choose among alternatives, even if one of the alternatives leads to a vacancy.
[4] Sometimes the voters know they are voting for a disqualified or dead candidate; sometimes they do not.
[5] Write-in candidacies are always possible in these cases, of course, and occasionally write-in votes are successful. Write-in campaigns are difficult to organize, however; especially in a short time. We assume that the situation would most frequently arise when a candidate dies so near to election day that there is no time either to substitute another name or organize a write-in. The increasing use of absentee and mail-in ballots makes it likely in such cases that a number of voters would have already voted before the candidate's death, further complicating any application of the "English" rule.
[6] We do not reach the question whether a political party, given the language of RCW 29.18.160, could substitute another candidate in a primary election in case of a death or disability, even in those cases where others have filed for the nomination of that party.
[7] We distinguish the situation presented by your question from a "void in candidacy", which occurs if all candidates for a nonpartisan position die or become disqualified. RCW 29.15.160. In such cases, the law provides for re-opening the filing period. RCW 29.15.210, .220.
[8] For superior court positions, article IV, section 16 provides that a candidate who gains a majority of the primary vote receives a certificate of election, unless there is notice of a write-in candidacy filed within ten days after the primary. For the other positions enumerated, a general election is held, but the only name printed on the ballot is that of the candidate who received a majority of the primary vote.
[9] We do not reach the issue whether, depending on the timing and the office in question, the death of a candidate results in an "election lapse" as defined in RCW 29.15.190 and .200. Such a question should be addressed in the context of a specific fact pattern.
[10] In State ex rel. Tennent v. Tollefson, 4 Wn.2d 194,103 P.2d 36 (1940), the state supreme court upheld a decision substituting the name of the candidate with the third highest vote on the runoff ballot when one of the original two qualifying candidates for mayor of Tacoma died just after the primary. In this case, however, the court was merely following a procedure explicitly set forth in the Tacoma City Charter. City and county charters might direct a different rule today, also, where they address the issues presented by your question.